D. Maimon Kirschenbaum (DK 2448)
JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
(212) 688-5640
(212) 688-2548 (fax)

*Attorneys for Named Plaintiffs and the FLSA Collective Plaintiffs*

Jeffrey E. Goldman (JG-4693)
LAW OFFICES OF JEFFREY E. GOLDMAN
501 Fifth Avenue
Suite 1900
New York, NY 10017
Tel: (212) 983-8999

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

ISAIAH GERAFINO, LENFORD JOHNSTON, SARA FAUST, SUKOL PHAIROJ, CHELSEA LINDMAN, VIRGINIA WORLEY, ROSALINA WALTER and THOMAS CAMPBELL on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

JEAN-GEORGES ENTERPRISES, LLC; JEAN-GEORGES MANAGEMENT LLC; PERRY STREET PROJECT LLC; TRIOMPHE RESTAURANT CORP. d/b/a JEAN GEORGES RESTAURANT and NOUGATINE; ORIGINE LLC d/b/a JOJO RESTAURANT; JEAN GEORGES LLC; LEONARD STREET LLC d/b/a/ 66 RESTAURANT; JEAN-GEORGES VONGERICHTEN and JOHN DOES 1-10

Defendants.
-----------------------------------------------------------x

INDEX NO: 07-cv-06729 (RJS)

## DECLARATION OF CHELSEA LINDMAN

I, Chelsea Lindman, under penalty of perjury, affirm as follows:

1. I was employed by Defendants as a server at Jean Georges restaurant ("Jean Georges") March 2006 until February 2007.

2. Throughout my employment at Jean-Georges, I was paid less than the federal minimum of $5.15 per hour

3. When I began working at Jean Georges, I was informed by managers and coworkers that the restaurant required tipped employees to pool their tips.

4. I was never asked whether I wanted to be in the tip-pool, and the terms of the tip pool were maintained and enforced by the restaurant's management, not the servers or similarly tipped employees.

5. Throughout my employment at Jean Georges, Jean Georges required us to share our tips with managers, by allowing the managers to be part of the tip-pool.

6. Although Jean Georges' managers participated in the tip-pool under the title "maitre d'" and/or other titles, their job duties illustrate that they were in fact managers, and not employees who are traditionally tipped. To this effect, the managers all had full access to the management office, and/or had their own offices.

7. The managers that were illegally part of the Jean Georges tip-pool include but are not limited to, Estelle Lamont, Anthony Rudolph, Andrew (last name unknown) John Palus, Nicholas, and Katherina (last name unknown).

8. At the time I was hired, these managers were introduced to me as managers and/or service directors, and I was informed that they had full authority over the terms of my work and continuation of my employment. To this effect, the employees referred to these people as managers.

9. These managers' primary job duties include: (a) supervising all activity on the floor, (b) disciplining employees, (c) dealing with customer complaints, (d) holding

2

daily meetings with servers in preparation for each shift, (e) scheduling and/or vacation requests, (f) verifying the money reports at the end of each night, and (g) sending employees home early.

10. The managers communicated to us that they had authority to discipline and, when necessary, terminate employees.

11. I was interviewed and offered employment by Anthony, who was in the Jean Georges tip-pool.

12. I several times witnessed employees disciplined and/or sent home by managers that were in the tip-pool.

13. Whenever I had scheduling issues, such as requests for time off, I made these requests to the managers on duty, who were in the tip-pool. The managers either granted or denied my requests.

14. The managers usually conducted the pre-shift meeting before every shift that I worked at.

15. The managers on duty determined when every service employee such as myself went home early or was required to stay late.

16. The managers on duty typically wore suits, as opposed to server uniforms.

17. For every shift, the managers assigned each waiter to her section.

18. When for any given reason a charge was to be 'comped', *i.e.*, voided, the managers had authority and routinely authorized these voids for the servers.

19. When a customer asked to speak to a manager, they were referred to the managers on duty.

20. The above-mentioned managers seldom, if ever, provided direct customer service, such as bringing food to customers, bussing etc.

3

21. Jean Georges employed hosts/hostesses who would greet and seat customers. This was not the managers' duty, and they seldom performed it.

22. On occasions that we were short-staffed, the managers would call employees and require them to come in and work. Similarly, when we were overstaffed, the managers would send employees home.

23. Managers frequently gave free items to customers.

I affirm, under penalty of perjury, that the above and foregoing information is true and correct.

Dated: New York, New York
       January 18, 2008

_____
Chelsea Lindman