D. Maimon Kirschenbaum (DK 2448)
JOSEPH & HERZFELD LLP
757 Third Avenue
25th Floor
New York, NY 10017
(212) 688-5640
(212) 688-2548 (fax)

Jeffrey E. Goldman (JG-4693)
LAW OFFICES OF JEFFREY E.
GOLDMAN
501 Fifth Avenue
Suite 1900
New York, NY 10017
Tel: (212) 983-8999

*Attorneys for Named Plaintiffs and the FLSA
Collective Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ISAIAH GERAFINO, LENFORD
JOHNSTON, SARA FAUST, SUKOL
PHAIROJ, CHELSEA LINDMAN,
VIRGINIA WORLEY, ROSALINA
WALTER and THOMAS CAMPBELL on
behalf of themselves and all others similarly
situated,

INDEX NO: 07-cv-06729 (RJS)

            Plaintiffs,


      v.


JEAN-GEORGES ENTERPRISES, LLC;
JEAN-GEORGES MANAGEMENT LLC;
PERRY STREET PROJECT LLC;
TRIOMPHE RESTAURANT CORP. d/b/a
PERRY STREETRESTAURANT and
NOUGATINE; ORIGINE LLC d/b/a JOJO
RESTAURANT; SPICE MARKET LLC;
LEONARD STREET LLC d/b/a/ 66
RESTAURANT; JEAN-GEORGES
VONGERICHTEN and JOHN DOES 1-10

            Defendants.
-------------------------------------------------------x


## DECLARATION OF MARK BUETTLER

I, Mark Buettler, under penalty of perjury, affirm as follows:

1.      My name is Mark Buettler.

2.      I was employed by Defendants as a server at Perry Street restaurant ("Perry Street") within the last three years.

3.      Throughout my employment at Jean-Georges, I was paid less than the federal minimum wage of $5.15 per hour.

4.      When I began working at Perry Street, I was informed by managers and coworkers that the restaurant required tipped employees to pool their tips.

5.      I was never asked whether I wanted to be in the tip-pool, and the terms of the tip pool were maintained and enforced by the restaurant's management, not the servers or similarly tipped employees.

6.      Throughout my employment at Perry Street, Perry Street required us to share our tips with managers, by allowing the managers to be part of the tip-pool.

7.      Although Perry Street's managers participated in the tip-pool under the title "maitre d'" and/or other titles, their job duties illustrate that they were in fact managers, and not employees who are traditionally tipped. To this effect, the managers were referred to as managers and all had full access to the management office.

8.      The managers that were illegally part of the Perry Street tip-pool include but are not limited to, Juan Carlos Ortiz, Tara Grey and Julio (last name unknown).

9.      Michelle, General Manager, introduced these managers to me as managers, informing me informing that they were my superiors, and that they had full authority over the terms of my work and continuation of my employment.

10.     These managers' primary job duties include: (a) supervising all activity on the floor, (b) disciplining employees, (c) dealing with customer complaints, (d) holding daily meetings with servers in preparation for each shift, (e) scheduling and/or vacation

2

requests, (f) verifying the money reports at the end of each night, and (g) sending employees home early.

11.    The managers communicated to us that they had authority to discipline and, when necessary, cause employees to be terminated either directly or indirectly.

12.    On occasions that we were short-staffed, the managers would call employees and require them to come in and work. Similarly, when we were overstaffed, the managers would send employees home.

13.    I several times witnessed the managers, such as Mr. Ortiz, discipline employees.

14.    The managers usually conducted the pre-shift meeting before every shift that I worked at.

15.    The managers on duty determined when every service employee such as myself went home early or was required to stay late.

16.    The managers on duty typically wore suits, as opposed to server uniforms.

17.    For every shift, the managers assigned each waiter to her section.

18.    When for any given reason a charge was to be 'comped', *i.e.,* voided, the managers had authority and routinely authorized these voids for the servers.

19.    The managers had their own code or card with which then they could access the computer as managers and perform managerial functions, such as comping items, voiding, reopening closed checks, reauthorizing checks, etc.

20.    When a customer asked to speak to a manager, they were referred to the managers on duty.

21.    The above-mentioned managers spent less than 15% of their working time providing direct customer service, such as bringing food to customers, bussing etc.  Any work that the managers performed in this regard was on an as-needed basis only.

22.    Perry Street employed hosts/hostesses who would greet and seat customers.  This was not the managers' duty.

I affirm, under penalty of perjury, that the above and foregoing information is true and correct.

Dated:  New York, New York
         January 21, 2008

                                                    Mark Buettler

4