UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- X
ISAIAH GERAFINO, LENFORD
JOHNSTON, SARA FAUST, SUKOL
PHAIROJ, CHELSEA LINDMAN,
VIRGINIA WORLEY, ROSALINA
WALTER and THOMAS CAMPBELL on
behalf of themselves and all others similarly
situated,

        Plaintiffs,

v.                                                                              CIVIL ACTION NO: 07-cv-06729
                                                                                 (RJS)
JEAN-GEORGES ENTERPRISES, LLC;
JEAN-GEORGES MANAGEMENT LLC;
PERRY STREET PROJECT LLC;
TRIOMPHE RESTAURANT CORP. d/b/a
JEAN GEORGES RESTAURANT and
NOUGATINE; ORIGINE LLC d/b/a JOJO
RESTAURANT; SPICE MARKET LLC;
LEONARD STREET LLC d/b/a/ 66
RESTAURANT; JEAN-GEORGES
VONGERICHTEN and JOHN DOES 1-10

        Defendants.
-------------------------------------------------------------- X

## DECLARATION OF JAE SEON LEE

I, Jae Seon Lee, under penalty of perjury, declare as follows:

    1.    My name is Jae Seon Lee. I give this Declaration based on my own knowledge for use in the proceeding specified above. I am over the age of 21 and competent to give this Declaration.

    2.    I am currently employed as a Floor Manager at Perry Street Restaurant ("Perry Street").

    3.    I was employed as a Maître d' at Perry Street from May 2007 to July 2007.

4. During the time I was a Maître d', the tips at Perry Street were pooled and distributed among the employees who were actively engaged in table service. Each position was assigned a certain number of "points" in the pool, which reflected the level of the position and the depth of guest interaction typically required by that position. Each point reflected an equal share in the pool, and the total tips were apportioned among the participating employees accordingly.

5. As a Maître d', I received a total of three points in the tip pool, which determined my share of the pooled gratuities at the end of each service.

6. I shared in the tip pool at Perry Street only from May 2007 through July 2007.

7. At Perry Street, each table is assigned a server, busser and runner. Servers typically take food and beverage orders. Bussers typically clear and reset tables and set up the dinning room. Runners bring food to guests' tables and oversee orders coming into the stations from the kitchen.

8. As a Maître d' at Perry Street during the service, I spent a significant of my time on the dining room floor. As I was instructed to do by my General Manager, I "touched" every guest table in the dining room each evening. To that end, I greeted guests, took orders and served food and beverages on a daily basis. I often lent a hand bussing tables when the restaurant was busy.

9. The servers, bussers and runners were responsible only for their table(s) within the dining room. My presence on the dining room floor was critical because I monitored the overall dining room service and determined where my assistance was most urgently needed, whereas the servers, bussers and runners were supposed to focus on their particular table(s).

10. The General Manager at Perry Street had the exclusive authority to make decisions with respect to hiring, firing or disciplining employees. I reported any incidents to the General Manager, who then took action directly with the employee.

11. The General Manager handled all payroll matters.

12. The General Manager handled all scheduling matters.

13. Since my promotion to Floor Manager at Perry Street, my job duties have changed. I now have the authority to interview, hire, fire, and discipline employees. I also set employees' work schedules, handle payroll matters and deal with maintenance issues.

14. Before I was employed at Perry Street, I was employed as the Floor Manager at Spice Market Restaurant ("Spice Market") for approximately three weeks in April and May 2007.

15. I did not share in the tip-pool when I was employed as the Floor Manager at Spice Market.

16. Before I was employed at Spice Market, I was employed as the Maître d', Assistant General Manager, and General Manager at 66 Restaurant ("66") from August 2004 to April 2007.

17. I did not share in the tip-pool when I was employed as the Assistant General Manager and General Manager at 66.

18. I did share in the tip-pool when I was employed as a Maître d' at 66. As a Maître d', I received a total of three points in the tip pool, which determined my share of the pooled gratuities at the end of each service.

19. At 66, each table was assigned a server, busser and runner. Servers typically took food and beverage orders. Bussers typically cleared and reset tables and set up the dinning

-3-

rooms. Runners brought food to guests' tables and oversaw orders coming into the stations from the kitchen.

20. As the Maître d' at 66, I oversaw the beverage program by ordering the wine, liquor and beer, and updating the restaurants wine lists but, during the service, I spent a significant amount of my time on the dining room floor.

21. As the Maître d' during the service, as I was instructed to do by my General Manager, I "touched" every guest table in the dining room each evening. To that end, I greeted guests, took orders and served food and beverages on a daily basis. I often lent a hand bussing tables when the restaurant was busy.

22. The servers, bussers and runners were responsible only for their table(s) within the dining room. My presence on the dining room floor was critical because I monitored the overall dining room service and determined where my assistance was most urgently needed, whereas the servers, bussers and runners were supposed to focus on their particular table(s).

23. The General Manager at 66 had the exclusive authority to make decisions with respect to hiring, firing and/or disciplining employees. I reported any incidents to the General Manager, who then took action directly with the employee.

24. The General Manager handled all payroll matters.

25. The General Manager handled all scheduling matters.

26. This Declaration is a voluntary statement made by me. I have carefully read this Declaration and fully understand its contents. There have been no threats made to me, express or implied, concerning my employment, potential loss of employment, or loss of any employment benefits whatsoever to induce me to make this statement. There have also been no express or

implied promises of employment or other benefits to induce me to make this voluntary statement.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: July 2, 2008
New York, New York

                                                                                        Jae Seon Lee