UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------X
ISAIAH GERAFINO, LENFORD
JOHNSTON, SARA FAUST, SUKOL
PHAIROJ, CHELSEA LINDMAN,
VIRGINIA WORLEY, ROSALINA
WALTER and THOMAS CAMPBELL on
behalf of themselves and all others similarly
situated,

           Plaintiffs,

                                          CIVIL ACTION NO: 07-cv-06729 (RJS)

v.

JEAN-GEORGES ENTERPRISES, LLC;
JEAN-GEORGES MANAGEMENT LLC;
PERRY STREET PROJECT LLC;
TRIOMPHE RESTAURANT CORP. d/b/a
JEAN GEORGES RESTAURANT and
NOUGATINE; ORIGINE LLC d/b/a JOJO
RESTAURANT; SPICE MARKET LLC;
LEONARD STREET LLC d/b/a/ 66
RESTAURANT; JEAN-GEORGES
VONGERICHTEN and JOHN DOES 1-10

           Defendants.
------------------------------------X

### DECLARATION OF PHILIPPE VONGERICHTEN

I, Philippe Vongerichten, under penalty of perjury, declare as follows:

    1.    I give this Declaration based on my personal knowledge for use in the proceeding specified above. I am over the age of 21 and competent to give this Declaration.

    2.    I am currently employed as the General Manager of Jean-Georges Restaurant ("Jean-Georges").

    3.    From 1991 to 1995, I worked as a server at JoJo. As a server, I was assigned on a nightly basis to a section of the dining room. I greeted guests, took orders, served food and

drinks, and performed other functions to ensure the overall success of my section, including bussing tables. I performed these duties on a daily basis.

4. As a server, I was paid an hourly wage, which was supplemented by my participation in the voluntary tip pool.

5. During the time that I was a server, the tips at JoJo were pooled and distributed among the employees who were actively engaged in table service. Each position was assigned a certain number of "points" in the pool, which reflected the level of the position and the depth of guest interaction typically required by that position. Each point reflects an equal share in the pool, and the total tips were apportioned among the participating employees accordingly.

6. As a server, I received a total of five points in the pool, which determined my share of the total tips collected during each service in which I participated.

7. Between 1995 and 1997, I worked as a Maitre d' at JoJo. As a Maitre d', I spent a significant amount of my time on the restaurant floor, greeting and seating guests and assisting with guest service throughout the restaurant.

8. In 1997, I was hired as a Maitre d' at Jean-Georges. My duties as a Maitre d' at Jean-Georges included overseeing and facilitating service in the dining rooms. To that end, I would greet and seat guests, take orders, serve food and beverages, and bus tables. During a lunch or dinner service, a significant amount of my time was spent in the dining room.

9. The General Manager at both JoJo and Jean-Georges had exclusive authority to make decisions with respect to hiring, firing and/or disciplining employees. My involvement in the discipline of employees was limited to reporting incidents or observations to the General Manager.

10. The General Manager at both JoJo and Jean-Georges handles all payroll matters.

11. As a Maitre d' at both JoJo and Jean-Georges, I participated in the tip pool.

12. In 2003, I became the General Manager of Jean-Georges. I have never participated in the tip pool as General Manager.

13. As the General Manager, I have exclusive authority with respect to the hiring, firing, and discipline of employees.

14. As General Manager, I handle all payroll matters.

15. The Assistant General Manager, who does not participate in the tip pool, drafts the staff schedule at Jean-Georges. All schedules must be approved by me before distribution.

16. Immediately prior to each service, I hold a meeting with the dining room staff to advise them of special events and/or important guests scheduled, as well as any menu changes for the service. I also address general personnel matters during this meeting.

17. I instruct all dining room staff to take a 30 minute meal break during the time between the lunch and the dinner service.

18. As General Manager, I delegate some ministerial tasks to my Assistant General Manager and, in some instances, the Maitre d's. For example, if an employee is sick and will not be able to work, they may contact the Maitre d', who will record the absence.

19. If a guest makes a complaint to a server or captain, and I am not immediately available, the Maitre d' for that dining room will attempt to resolve the problem. In all cases, the Maitre d' will report the incident to me, and I make every effort to speak with the guest.

20. I instruct all Maitre d's to "touch" every guest table at least once each evening.

21. Jean-Georges has two dining rooms, the main dining, typically referred to as "Jean-Georges" and the informal bar dining room, referred to as "Nougatine." The only major

difference between the two dining rooms was that only Jean-Georges utilized a captain in its service.

22. Jean-Georges strives in all instances to provide exceptional service to its guests. At Jean-Georges, each section of the main dining room is assigned a captain, server, busser, and runner. The captain serves as the more "senior" server, and typically takes a table's initial order and performs tableside carving. A server typically assists with taking orders, serving food and beverages, and setting and clearing all silverware for the table. The busser and runner typically assist with serving bread, water, bringing food and beverages to the table, and clearing the table.

23. At Jean-Georges, the Maitre d's are an integral part of the dining service because of their ability to monitor the dining room and assist with table service so that each section is completing service at an appropriate pace, whereas the captains, servers, bussers and runners are supposed to focus on their particular table(s).

24. I am making this Declaration voluntarily. I have reviewed this Declaration carefully and fully understand its contents. I have not received any threat, express or implied, concerning my employment, potential loss of employment, or loss of any employment benefits whatsoever to compel me to make this Declaration. I have not received any promises of employment or other benefits to persuade me to make this voluntary Declaration.

I declare under the penalty of perjury that the foregoing is true and correct.

Dated: July 2, 2008
New York, New York

_____
Philippe Vongerichten