PROSKAUER ROSE LLP
Elise M. Bloom
Kathleen M. McKenna
1585 Broadway
New York, NY 10036-8299
Telephone: 212.969.3000
Fax: 212.969.2900
Email: ebloom@proskauer.com
*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**ISAIAH GERAFINO, LENFORD**
**JOHNSTON, SARA FAUST, SUKOL**
**PHAIROJ, CHELSEA LINDMAN,**
**VIRGINIA WORLEY, ROSALINA**
**WALTER and THOMAS CAMPBELL on**
behalf of themselves and all others similarly
situated,

               **Plaintiffs,**

        **v.**

**JEAN-GEORGES ENTERPRISES, LLC;**
**JEAN-GEORGES MANAGEMENT LLC;**
**PERRY STREET PROJECT LLC;**
**TRIOMPHE RESTAURANT CORP. d/b/a**
**JEAN GEORGES RESTAURANT and**
**NOUGATINE; ORIGINE LLC d/b/a JOJO**
**RESTAURANT; SPICE MARKET LLC;**
**LEONARD STREET LLC d/b/a/ 66**
**RESTAURANT; JEAN-GEORGES**
**VONGERICHTEN and JOHN DOES 1-10**

               **Defendants.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

**CIVIL ACTION NO: 07-cv-06729**
**(RJS)**

**DEFENDANTS' MEMORANDUM IN**
**OPPOSITION TO PLAINTIFFS'**
**MOTION FOR CONDITIONAL**
**COLLECTIVE CERTIFICATION**
**AND FOR COURT FACILITATION**
**OF NOTICE PURSUANT TO 29 U.S.C**
**§ 216(b)**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................iii

PRELIMINARY STATEMENT ...........................................................................................2

FACTS ..................................................................................................................................3

I.    The Parties ..................................................................................................................3

    A.    The Restaurants ...............................................................................................3

    B.    The Restaurants' Employment Structure ........................................................3

        1.    The General Managers ........................................................................3

        2.    The Maitre d's.....................................................................................3

        3.    The Other Positions............................................................................5

    C.    The Restaurants' Tip Sharing Policies ...........................................................6

ARGUMENT.........................................................................................................................6

A.    Plaintiffs Must Present Admissible Evidence Establishing That They Are Similarly Situated With Respect to a Common Illegal Policy or Practice.............................6

B.    Plaintiffs' Evidence Is Largely Inadmissible .......................................................9

C.    The Improper and Inadmissible Portions of Plaintiffs' Declarations Should Be Stricken ......12

D.    The Arguably Admissible Evidence Presented by Plaintiffs is Insufficient to Warrant Certification ......................................................................................................13

        1.    The Maitre d's Participation In the Tip Pool Is Not Unlawful Under the FLSA..............................................................................................14

            a.    The Maitre d's Were Not Employers Under the FLSA ..............................14

            b.    The Maitre d's Were Actively Engaged in Guest Service, and Therefore Were Properly "Tipped Employees" .......................................................17

E.   Plaintiffs Have Failed to Carry Their Burden of Demonstrating That They Are Similarly Situated.................................................................................................................18

     1.   The Tip Pool Claim.................................................................................................18

     2.   The "Other Practices" Claim ................................................................................22

CONCLUSION.................................................................................................................................25

# Table of Authorities

**Page(s)**

CASES

*Braunstein v. E. Photographic Labs., Inc.*,
600 F.2d 335 (2d Cir. 1978), *cert. denied*, 441 U.S. 944 (1979) ................................................. 6

*Chan v. Sung Yue Tung Corp.*,
No. 03 Civ. 6048 (GEL), 2007 WL 313483 (S.D.N.Y. Feb. 1, 2007) ......................... 14, 15, 16

*Chung v. New Silver Palace Rest., Inc.*,
246 F. Supp. 2d 220 (S.D.N.Y. 2002) ..................................................................................... 15

*Clark v. Dollar Gen. Corp.*,
No. 3:00-0729, 2001 WL 878887 (M.D. Tenn. May 23, 2001) ................................................ 8

*D'Anna v. M/A-COM, Inc.*,
903 F. Supp. 889 (D. Md. 1995) ............................................................................................... 7

*Diaz v. Electronic Boutique of America, Inc.*,
2005 WL 2654270 (W.D.N.Y. Oct. 17, 2005) ........................................................................ 24

*Dole v. Cont'l Cuisine, Inc.*,
751 F. Supp. 799 (E.D. Ark. 1990) ............................................................................. 14, 17, 18

*Donovan v. Agnew*,
712 F.2d 1509 (1st Cir. 1983) ................................................................................................. 15

*Dudley v. Texas Waste Systems, Inc.*,
No. Civ.A.SA-05-CA-0078, 2005 WL 1140605 (W.D. Tex. May 16, 2005) ......................... 21

*England v. New Century Fin. Corp.*,
370 F. Supp. 2d 504 (M.D. La. 2005) ..................................................................................... 24

*Flores v. Osaka Health Spa, Inc.*,
*supra*, 2006 WL 695675 ......................................................................................................... 22

*Frasier v. Gen. Elec. Co.*,
930 F.2d 1004 (2d Cir. 1991) .................................................................................................. 15

*Goldberg v. Whitaker House Coop.*,
366 U.S. 28 (1961) .................................................................................................................. 15

*H & R Block, v. Housden*,
186 F.R.D. 399 (E.D. Tex. 1999) ............................................................................................ 22

*Harrison v. McDonald's Corp.*,
411 F. Supp. 2d 862 (S.D. Ohio 2005) ............................................................................ passim

*Haynes v. Singer Co.*,
    696 F.2d 884 (11th Cir. 1983) ............................................................................6

*Herman v. RSR Sec. Servs.*,
    172 F.3d 132 (2d Cir. 1999).........................................................................15, 16

*Hernandez v. City Wide Insulation of Madison, Inc.*,
    No. 05-C-303, 2006 WL 1993552 (E.D. Wis. July 14, 2006) ...............................17

*Hoffmann v. Sbarro, Inc.*,
    982 F. Supp 249 (S.D.N.Y. 1997) ......................................................................7

*Hoffmann-La Roche, Inc. v. Sperling*,
    493 U.S. 165 (1989)......................................................................................6, 23

*Holt v. Rite Aid Corp.*,
    333 F. Supp. 2d 1265 (M.D. Ala. 2004) .............................................................6

*Hunter v. Sprint Corp.*,
    346 F. Supp. 2d 113 (D.D.C. 2004) ..................................................................24

*Kilgore v. Outback Steakhouse of Fla., Inc.*,
    160 F.3d 294(6th Cir. 1998) ..............................................................14, 17, 18

*Lentz v. Spanky's Restaurant II, Inc.*,
    491 F. Supp. 2d 663 (N.D. Tex. 2007) .............................................................21

*McElmurry v. U.S. Bank Nat'l Ass'n*,
    2005 WL 2078302 (D. Or. July 29, 2005)..........................................................12

*McElmurry v. U.S. Bank Nat'l Ass'n*,
    No. CV-04-642-HU, 2004 WL 1675925 (D. Or. July 27, 2004).............................8

*Mike v. Safeco Ins. Co.*,
    274 F. Supp. 2d 216 (D. Conn. 2003).....................................................7, 23, 24

*Morales v. Plantworks, Inc.*,
    No. 05 Civ. 2349 (DC), 2006 WL 278154 (S.D.N.Y. Feb. 2, 2006).....................7, 9

*Morgan v. Speakeasy, LLC*,
    No. 05 C 5795, 2007 WL 2757170 (N.D. Ill. Sept. 20, 2007)..............................17

*Prizmic v. Armour, Inc.*,
    No. 05-CV-2503, 2006 WL 1662614 (E.D.N.Y. June 12, 2006) ......................7, 14

*Quintanilla v. A & R Demolition, Inc.*,
    No. Civ.A H-04-1965, 2005 WL 2095104 (S.D. Tex. Aug. 30, 2005) ...................23

*Richards v. Computer Sci. Corp.*,
    No. 3-03-CV-00630(DJS), 2004 WL 2211691 (D. Conn. Sept. 28, 2004) ....................8, 9, 12

*Rubin v. Tourneau, Inc.*,
    797 F. Supp. 247 (S.D.N.Y. 1992) ........................................................................................15

*Seever v. Carrols Corp.*,
    528 F. Supp. 2d 159 (W.D.N.Y. 2007) ...................................................................22, 24, 25

*Severtson v. Phillips Beverage Co.*,
    137 F.R.D. 264 (D. Minn. 1991).............................................................................................7

*Star Ins. Co. v. Hazardous Elimination Corp.*,
    No. 05-cv-4762, 2007 U.S. Dist. LEXIS 6574 (E.D.N.Y. Jan. 30, 2007) ..............................13

*Stubbs v. McDonald's Corp.*,
    227 F.R.D. 661 (D. Kan. 2004)............................................................................................20

*Tafarella v. Hollywood Greyhound Track, Inc.*,
    No. 07-60017-CIV, 2007 WL 2254553 (S.D. Fla. Aug. 1, 2007) ............................................6

## STATUTES

29 U.S.C. §§ 201 *et seq.*..........................................................................................................2

29 U.S.C. § 203(d) ...................................................................................................................15

29 U.S.C. § 203(m) ..................................................................................................................14

29 U.S.C. § 203(t) ....................................................................................................................14

## OTHER AUTHORITIES

Charles Alan Wright, Arthur H. Miller & Mary Kay Kane, *Federal Practice and
    Procedure* § 1807 at 490-91 (2005)........................................................................................8

Fed. R. Evid. 601 ......................................................................................................................10

Fed. R. Evid. 602 ........................................................................................................................9

Fed. R. Evid. 701 ......................................................................................................................10

Fed. R. Evid. 802 ......................................................................................................................10

Rule 56(e)..............................................................................................................................9, 12

## PRELIMINARY STATEMENT

Plaintiffs' motion raises a critical issue in the proper judicial administration of collective actions under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.*:

Under the FLSA, the decision whether to conditionally certify a collective action is vested in the district court's sound discretion. That discretion, however, should be exercised in favor of conditional certification only if plaintiffs provide competent, admissible evidence establishing that they are similarly situated to the class members whom they seek to represent. Here, Plaintiffs contend that they and their putative class are similarly situated because all participated in a tip pool in which Maitre d's — whom Plaintiffs characterized as "managers" — also, but unlawfully, participated. Plaintiffs' showing, however, consists of inadmissible and misleading testimony that when reduced to its admissible core consists only of Plaintiffs' conclusory assertions that the Maitre d's were "employers" under the FLSA and therefore could not participate in the tip pool. In contrast, Defendants have submitted seven detailed declarations establishing through admissible testimony that the Maitre d's were no more than lead servers and not "employers" within the meaning of the FLSA and thus could lawfully share in the tips. As we show in detail below, because Plaintiffs have failed to show that they were the victims of a common policy or policy that violated the law, the Court should deny Plaintiffs' motion for conditional certification and deny their request for Court facilitation of notice.

## FACTS

I.    **The Parties**

A.    **The Restaurants**

At issue are five of New York City's best-known fine-dining restaurants: Jean-Georges, Perry Street, Spice Market, JoJo, and 66 (collectively the "Restaurants"). Located throughout the City,[1] the Restaurants typically serve lunch five to seven days a week and dinner seven nights a week.[2] They seat between 62 and 130 guests. (Decl. of Freedman ¶¶ 14, 15 , 24, 29, 30.)

B.    **The Restaurants' Employment Structure**

1.    **The General Managers**

Each of the Restaurants is managed by a General Manager, none of whom participated in the challenged tip pool. (Decl. of Freedman ¶¶ 5, 6.) At each Restaurant, the General Manager is the only employee who is able to hire, fire and/or discipline employees. (*Id.* ¶ 7.) In addition, the General Managers handle all employee scheduling and all payroll matters. (Decls. of Choi ¶¶ 10,11, Freedman ¶¶ 8, 9, Hanasby ¶¶ 11, 12, 13, Hitko ¶¶ 10, 11, 12, 14, Lee ¶¶ 23, 24, 25, Montevirgen ¶¶ 18, 19, 20, Vongericthen ¶¶ 9, 10, 12, 14.)

2.    **The Maitre d's**

At all relevant times, each of the Restaurants had at least one Maitre d' on duty during each service. (Decl. of Freedman ¶¶ 15, 20, 25, 30, 36.) During each service the Maitre d's spent a significant amount of time on the dining room floor making sure the service was running smoothly. Every Maitre d' was intimately involved in all aspects of the Restaurant's service and

---

[1] Jean Georges is located at 1 Central Park West, Perry Street is located at 176 Perry Street; Spice Market is located at 403 West 13th Street; and JoJo is located at 160 East 64th Street. 66 was located at 241 Church Street but closed in April 2007.

[2] Jean-Georges also serves breakfast seven days a week.

played an integral role in assisting all the other tipped employees in serving the guests. Specifically, during a service, the Maitre d's greeted guests, took orders, served food and beverages and bussed tables.  (Decls. of Choi ¶ 8, Hanasby ¶ 8, Hitko ¶ 8, Lee ¶ 8, Montevirgen ¶¶ 14, 15.)  The Maitre d's also "touched" every table during a service — meaning they performed at least one distinct service-related function for each table during every service. (Decls. of Choi ¶ 8, Hitko ¶ 8, Lee ¶ 8, Montevirgen ¶ 15, Vongerichten ¶ 20.)  Additionally, many of the Maitre d's suggested and poured wine for the guests.  (Decl. of Lee ¶ 20.)  Finally, at Jean-Georges, the Maitre d's also assisted in tableside carvings.  (Decl. of Freedman ¶ 45.) The Maitre d's presence on the dining room floor was critical since the Maitre d's monitored the overall dining room service and determined where their assistance was most urgently needed, whereas the servers, bussers and runners were focused on their particular table(s).  (Decls. of Choi ¶ 9, Hanasby ¶ 10, Hitko ¶ 9, Lee ¶ 9, Montevirgen ¶ 16.)

Throughout the relevant period, the Maitre d's participated in the tip pool (described below).  (Decl. of Freedman ¶ 3.)  The Maitre d's no longer participate in the tip pools at any of the Restaurants.[3]  (Decls. of Choi ¶ 6, Freedman ¶¶ 16, 21, 26, 31, 37, Hanasby ¶ 5, Hitko ¶¶ 4, 5, Lee ¶¶ 4, 5, Vongerichten ¶ 11.)

Each Restaurant also had at least one Door Maitre d'.  (Decl. of Freedman ¶¶ 15, 20, 25, 30, 36.)  The Door Maitre d' assists in making table assignments and seating guests, meets and greets guests and assists in the beverage service in the bar/lounge area.  The Door Maitre d' is always at the door and "touches" every guest in the bar/lounge area.  Throughout the relevant period, the Maitre d's participated in the tip pool (described below).  (Decl. of Freedman ¶ 48.)

---

[3] The Maitre d's were removed from the Spice Market pool in July 2006; from the Jean-Georges pool in April 2007; and from the JoJo and Perry Street pools in July 2007.  As noted, 66 closed on April 15, 2007.

### 3.    The Other Positions

During the relevant period, in addition to the Maitre d's and Door Maitre d's the following employee positions were tipped positions:  servers, captains, cocktail servers, bartenders, barbacks, runners and bussers.  (Decl. of Freedman ¶ 3.)  Not all the Restaurants had each of these positions.  (*Id.*)

The servers typically set up the dining room, greet guests, present guests with menus, take and place guests' orders, refill beverages, ensure guests' satisfaction, and assist in clearing tables.[4]  (Decls. of Choi ¶ 7, Freedman ¶ 38, Hanasby ¶ 7, Montevirgen ¶¶ 6, 7.)  The cocktail servers typically service all food and beverage needs in the bar and lounge areas and assist in the dining room clearing and refilling beverages.  (Decl. of Freedman ¶ 40.)  Bussers and runners typically assist with serving bread, pouring water, bringing food and beverages to the table and setting and clearing the table.[5]  (Decls. of Choi ¶ 7, Freedman ¶¶ 41, 44, Hanasby ¶ 7, Lee ¶ 19, Montevirgen ¶ 6, Vongerichten ¶ 22.)

The bartenders and barbacks handle most of the responsibilities in the bar and lounge areas.  The bartenders typically take and make drink orders, while the barbacks typically assist in making drinks, maintain all necessary bar products, clear the bar and perform other tasks needed to insure that premium service is provided to guests in the bar.  (Decl. of Freedman ¶¶ 42, 43.)

---

[4] The captains, a tipped position only at Jean-Georges, typically give guests their menus, take their orders, carve a guest's food and perform all other server duties. (Decls. of Freedman ¶ 39, Montevirgen ¶¶ 6, 12, Vongerichten ¶22.)

[5] Some of the restaurants had back, floor and coffee bussers.  In addition to the usual busser duties (serving bread, pouring water and clearing and re-setting tables), floor bussers spot check silverware and glassware prior to distributing it to all stations; coffee bussers make and deliver coffee; back bussers perform all of these duties. (Decl. of Freedman ¶¶ 45, 46, 47.)

C.     **The Restaurants' Tip Sharing Policies**

During the relevant period, each Restaurant had a tip pool.  All tips received during each

service (shift) were put into a pool.  Each tipped position was assigned a certain number of

"points" in the pool, which reflected the position's level and the depth of customer interaction

the position typically required.  At the end of each service, the tips would be counted, and each

tip pool point would be assigned a dollar value.  A tipped employee would be able to calculate

his/her tips for any particular service by simply multiplying his/her tip points by tip point value.

(Decls. of Choi ¶ 4, Freedman ¶ 4, Hanasby ¶¶ 4, 5, Hitko ¶¶ 4, 5, Lee ¶¶ 4, 5, Montevirgen ¶¶ 9,

10, Vongerichten ¶¶ 5, 6)


**ARGUMENT**

A.     **Plaintiffs Must Present Admissible Evidence Establishing That They Are
       Similarly Situated With Respect to a Common Illegal Policy or Practice.**

The right to proceed with a § 16(b) collective action is not automatic but must be

approved by the court.  *Braunstein v. E. Photographic Labs., Inc.*, 600 F.2d 335, 336 (2d Cir.

1978), *cert. denied*, 441 U.S. 944 (1979) (recognizing that district court may authorize the

issuance of notices in the appropriate case).  Thus, while the district courts have discretionary

power to authorize the sending of notices to potential class members in a § 16(b) collective

action, *Hoffmann-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989), "[t]he power to authorize

notice must, however, be exercised with discretion and only in appropriate cases." *Holt v. Rite*

*Aid Corp.*, 333 F. Supp. 2d 1265, 1268 (M.D. Ala. 2004) (citing *Haynes v. Singer Co.*, 696 F.2d

884, 886 (11th Cir. 1983)).  In short, certification is not lightly granted, and it is an abuse of

discretion to grant conditional certification in the absence of a sufficient showing.  *See, e.g.,*

*Tafarella v. Hollywood Greyhound Track, Inc.*, No. 07-60017-CIV, 2007 WL 2254553, at *3

(S.D. Fla. Aug. 1, 2007) (holding that "[a]lthough the standard for opt-in class certification is relatively elastic, it is not so malleable that any proposed class of employees passes muster.")

While the weight of the cases suggest that at this stage plaintiffs need make only a relatively modest factual showing, a modest showing does not mean no showing. It is still incumbent on plaintiffs to present sufficient facts to demonstrate that they and the potential plaintiffs together were victims of a common policy or plan that violated the law. *Mike v. Safeco Ins. Co.*, 274 F. Supp. 2d 216, 220 (D. Conn. 2003) (citing *Hoffmann v. Sbarro, Inc.*, 982 F. Supp 249, 261 (S.D.N.Y. 1997)). "Absent such a showing, an employer may be 'unduly burdened by a frivolous fishing expedition conducted by plaintiff at the employer's expense.'" *Prizmic v. Armour, Inc.*, No. 05-CV-2503, 2006 WL 1662614, at *2 (E.D.N.Y. June 12, 2006) (quoting *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 893-94 (D. Md. 1995)). In addition, requiring plaintiffs "to make a preliminary factual showing that a similarly situated group of potential plaintiffs exists" serves the salutary purpose of "avoid[ing] the 'stirring up' of litigation through unwarranted solicitation." *D'Anna*, 903 F. Supp. at 894. Thus, "[b]efore subjecting an employer to the burdens of a collective action, 'plaintiffs must establish a colorable basis for their claim that a class of "similarly situated" plaintiffs exist.'" *Harrison v. McDonald's Corp.*, 411 F. Supp. 2d 862, 868 (S.D. Ohio 2005) (quoting *Severtson v. Phillips Beverage Co.*, 137 F.R.D. 264, 267 (D. Minn. 1991)).

This showing, moreover, requires "actual *evidence* of a factual nexus between [plaintiffs'] situation and those that [they claim] are similarly situated rather than mere conclusory allegations." *Prizmic*, 2006 WL 1662614, at *2 (emphasis added). Indeed, the courts are uniform in their holding that that "'conclusory allegations are not enough'" to meet this burden. *Morales v. Plantworks, Inc.*, No. 05 Civ. 2349 (DC), 2006 WL 278154, at *3 (S.D.N.Y.

Feb. 2, 2006) (quoting 7B Charles Alan Wright, Arthur H. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1807 at 490-91 (2005)).

Moreover, "for the purpose of determining whether similarly situated employees exist . . . [c]ourts . . . have repeatedly held that only admissible evidence may be considered in connection with a § []16(b) motion." *Harrison v. McDonald's Corp.*, *supra*, 411 F. Supp. 2d at 865 (collecting cases).[6] Here, Plaintiffs purport to have submitted declarations from several former employees testifying as to the supposed "managerial" role of Defendants' Maitre d's.[7] But as we demonstrate further below, a careful reading of those declarations demonstrates that they are largely inadmissible either because the witnesses lack personal knowledge or present inadmissible hearsay. In those few instances in which they testify based on their own first-hand observations, they present an incomplete and misleading factual picture of the Maitre d's' duties. When stripped of their inadmissible evidence and incomplete assertions, Plaintiffs' evidentiary showing amounts to little more than conclusory allegations that routinely have been rejected by the courts as insufficient to support conditional certification.

---

[6] *Richards v. Computer Sci. Corp.*, No. 3-03-CV-00630(DJS), 2004 WL 2211691, at *1 (D. Conn. Sept. 28, 2004) (striking portions of affidavits submitted in connection with § 16(b) motion as hearsay and as "not based on personal knowledge."); *McElmurry v. U.S. Bank Nat'l Ass'n*, No. CV-04-642-HU, 2004 WL 1675925, at *10 (D. Or. July 27, 2004) (requiring plaintiffs "to show through admissible evidence" that employer acted on a class-wide basis). *Accord Clark v. Dollar Gen. Corp.*, No. 3:00-0729, 2001 WL 878887, at *2 (M.D. Tenn. May 23, 2001) (striking portions of affidavit submitted in support of conditional certification motion that contained "inadmissible hearsay.")

[7] One declarant, Rosalina Walter, is, in fact, a current employee. Yet in her "cookie-cutter" declaration she testifies that she "*was* employed by Defendant as a server . . . within the past three years." (Walter Decl. ¶ 1 (emphasis added).) As demonstrated *post*, many of the declarants make precisely the same statements in precisely the same numbered paragraphs in their declarations. Little weight properly should be given to such attorney-driven "me too" declarations.

**B.    Plaintiffs' Evidence Is Largely Inadmissible.**

As noted above, to obtain the Court's conditional certification, Plaintiffs must present *admissible* evidence demonstrating that they are similarly situated. Courts in this district have not yet articulated the precise standard to be applied to evidence submitted in connection with collective action certification motions, but they have consistently required that plaintiffs demonstrate actual evidence, not mere conclusory allegation, of a common practice to which they were subjected that violates the FLSA. *See, e.g., Morales,* 2006 WL 278154, at *3; *Prizmic,* 2006 WL 1662614, at *2. However, one district court in the Second Circuit adopted the language of Rule 56(e) "as a guide for purposes of ruling on the present motion [for certification of collective action]." *Richards v. Computer Sci. Corp., supra,* 2004 WL 2211691, at *1 (D. Conn. Sept. 28, 2004). *Richards* noted that "Rule 56(e) succinctly states the general principles that are understood to apply to any testimony that is proffered to this court in support of a legal claim," even though the rule, on its face, applies only to motions for summary judgment. *Id.* Fed. R. Civ. P. 56(e) provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Guided by these fundamental "general principles," it is clear that the declarations submitted by Plaintiffs in support of their motion are replete with bare, conclusory allegations, hearsay, and statements made without personal knowledge. As such, they cannot demonstrate the showing required here. CJS AFFIDAVITS § 45 ("Generally, affidavits must be made on the affiant's personal knowledge. It is an affiant's personal knowledge, and not his or her beliefs, opinions, rumors, or speculation, that are the proper subject of any affidavit."); *accord* Fed. R.

Evid. 602; *See also* Fed. R. Evid. 802 ("Hearsay is not admissible" unless subject to an established exception).

The statement(s) in each of Plaintiffs' declarations that purport to identify the "primary job duties" of the Maitre d's or, in some cases, characterize or quantify the time Maitre d's spend engaged in "direct customer service" are beyond the personal knowledge of any of the declarants. Consequently, that testimony is improper and should be stricken. Fed. R. Evid. 601 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding the witness has personal knowledge of the matter.") (*See* Decls. of Edwards ¶¶ 10, 14, Garefino ¶¶ 10, 21-22, Lindman ¶¶ 9, 20-21, Chowdhury ¶¶ 8, 19-20, Melendez ¶¶ 8, 20-21, Walter ¶¶ 8, 18-19, Worley ¶¶ 8, 19-20, Buettler ¶¶ 10, 21-22, Faust ¶¶ 10, 19-20, Johnston ¶¶ 11,21-22, Charnesky, ¶¶ 11, 22-23, Bern ¶¶ 10, 22-23, Leon ¶¶ 10, 23-24.) Plaintiffs have asserted no basis for their boilerplate characterization of the duties of the Maitre d's; indeed, they cannot do so as they do not work sufficiently often and closely with a Maitre d; from which they can competently to discern their "primary duties" (even assuming they can competently opine as to the Maitre d's' "primary duties.") Fed. R. Evid. 701. Likewise, Plaintiffs were necessarily actively engaged in their own duties during the times when they might have "observed" the Maitre d's performing theirs. Indeed, Plaintiffs' declarations do not set forth specific personal observations; rather, they make identical and unsupported conclusory statements.

Similarly, the statement in each declaration that "[the Maitre d's] job duties illustrate that they were in fact managers, and not employees who are traditionally tipped" is nothing more than an unsupported conclusion, which has no place in a sworn declaration. (Decls. of Edwards ¶ 7, Garefino ¶ 7, Lindman ¶ 6, Chowdhury ¶ 6, Melendez ¶ 6, Walter ¶ 6, Worley ¶ 6, Buettler ¶ 7, Faust ¶ 7, Johnston ¶ 6, Charnesky ¶ 7, Bern ¶ 6, Leon ¶ 6.)

Plaintiffs' declarations also contain numerous statements which constitute inadmissible hearsay. As such, these statements should be disregarded. Plaintiffs represent that the Maitre d's were introduced to them as "managers," and they were informed that the Maitre d's had "full authority over the terms of [their] work." (Decls. of Edwards ¶ 9, Garefino ¶ 9, Buettler ¶ 9, Faust ¶ 9, Lindman ¶ 8,  Johnston ¶8.)

Additionally, Plaintiffs indicate that the employees referred to the Maitre d' s as "managers." (Decls. of Garefino ¶ 9, Lindman ¶ 8, Chowdhury ¶ 6, Melendez ¶ 6, Buettler ¶ 7, Faust ¶ 9, Johnston ¶ 8,10, Charnesky ¶¶ 9-10, Bern ¶¶ 8-9, Leon ¶¶ 8-9.) Aside from the fact that the manner in which Plaintiffs allegedly addressed the Maitre d's has no bearing on the propriety of their inclusion in the tip pool, these statements are clearly hearsay. Accordingly, Defendants respectfully submit that this Court should strike these improper statements from the record on this motion.

In a similar manner, many of the statements in Plaintiffs' declarations purport to attest to the experiences or beliefs of the entire staff, or otherwise lack any basis for personal knowledge thereof. For example, Plaintiffs "declare" that the Maitre d's on duty determined when every service employee went home early or was required to stay late. (Decls. of Garefino ¶ 16, Lindman ¶ 15,  Melendez ¶ 15, Chowdhury ¶ 14, Walter ¶ 13,  Worley ¶ 14, Buettler ¶ 15, Faust ¶ 14, Johnston ¶ 16,  Charnesky ¶ 16, Bern ¶ 16, Leon ¶ 17.) Plaintiffs similarly declare that on occasions when the restaurant was short-staffed, the Maitre d's would call employees and require them to come in and work, and when the restaurant was overstaffed, the Maitre d's would send employees home. (Decls. of Lindman, ¶ 22, Chowdhury ¶ 12, Melendez ¶ 13, Walter ¶ 11, Worley ¶ 12, Buettler ¶ 12, Charnesky ¶ 27,  Bern ¶ 27, Leon ¶ 28.) However, Plaintiffs have not – and cannot – establish a basis for their personal knowledge of the circumstances

surrounding every employee who worked late, left early, or was requested to otherwise alter their

work schedule in response to the demand of the dining room.

Plaintiffs further declare that for every shift, the Maitre d's assigned each waiter to

his/her section. (Decls. of Garefino, ¶ 18 Lindman ¶ 17, Melendez ¶ 17, Chowdhury ¶ 16,

Walter ¶ 15, Worley ¶ 16, Buettler ¶ 17, Faust ¶ 16, Johnston ¶ 18, Charnesky ¶ 19, Bern ¶ 19,

Leon ¶ 20.) Similarly, Plaintiffs have failed to establish personal knowledge of the assignment

of every sever, at every shift, with respect to the ministerial task of matching servers to a set

group of tables within the dining room.

Rather than attesting to personal observations or experiences with respect to the Maitre

d's at the respective Restaurants, Plaintiffs have simply echoed "me too" to the vague and

conclusory boilerplate generalizations that plague these declarations. Plaintiffs have failed to

demonstrate personal knowledge with respect to the bulk of the declarations and, as such, those

statements should be excluded from consideration in this motion.

**C.    The Improper and Inadmissible Portions of Plaintiffs' Declarations Should Be Stricken.**

When faced with a motion for preliminary certification of a collective action, as here,

many courts have stricken inadmissible evidence offered by plaintiffs in support of their motion.

*See, e.g., Harrison v. McDonald's Corp.,* 411 F. Supp. 2d 862, 866-67 (S.D. Ohio 2005) (striking

inadmissible hearsay from affidavits supporting motion for collective action); *McElmurry v. U.S.

Bank Nat'l Ass'n,* 2005 WL 2078302, at *11 (D. Or. July 29, 2005) (affirming order striking

affidavit, where it was "riddled with inadmissible hearsay, conclusory statements and arguments,

and information clearly not made on the affiant's personal knowledge . . ."); *Richards v.

Computer Sci. Corp.,* 2004 WL 2211691, at *1 (D. Conn. Sept. 28, 2004) (guided by Fed R.

Civ. P. 56(e) as providing "general principles...understood to apply to any testimony, and

striking portions of affidavits submitted in support of a motion to proceed as a collective action that contained inadmissible hearsay or were not supported by personal knowledge); *Star Ins. Co. v. Hazardous Elimination Corp.*, No. 05-cv-4762, 2007 U.S. Dist. LEXIS 6574, at *39-*40 (E.D.N.Y. Jan. 30, 2007) (noting that "where an affidavit is not based on personal knowledge, it need not be considered" and that "where an affidavit contains hearsay that would not be admissible as a hearsay exception, such hearsay can be struck.")

As demonstrated above, Plaintiffs' boilerplate declarations are rife with improper statements that are conclusory, constitute hearsay, or otherwise were made without personal knowledge. Accordingly, Defendants respectfully request that the following portions of Plaintiffs' declarations be stricken from the record on this motion:

| Declaration | Paragraphs |
|---|---|
| Edwards Decl. | ¶¶ 7, 9-10, 14 |
| Garefino Decl. | ¶¶ 7, 9-10, 16, 18-22 |
| Lindman Decl. | ¶¶ 6, 8-9, 15, 17-23 |
| Chowdhury Decl. | ¶¶ 6, 8, 12, 14, 16-20 |
| Melendez Decl. | ¶¶ 6, 8, 13, 15, 17-21 |
| Walter Decl. | ¶¶ 6, 8, 11, 13, 15-19 |
| Worley Decl. | ¶¶ 6, 8, 12, 14, 16-20 |
| Buettler Decl. | ¶¶ 7, 9, 10, 12, 15, 17-18, 20-22 |
| Faust Decl. | ¶¶ 7, 9-10, 14, 16-20 |
| Johnston Decl. | ¶¶ 6, 8, 10-11, 16, 18-23 |
| Charnesky Decl. | ¶¶ 7, 9-11, 16, 19, 21-24, 27 |
| Bern Decl. | ¶¶ 6, 8-10, 16, 19, 12-24, 27 |
| Leon Decl. | ¶¶ 6, 8-10, 17, 20, 22-25, 28 |

**D.    The Arguably Admissible Evidence Presented by Plaintiffs is Insufficient to Warrant Certification.**

Here, Plaintiffs claim that they are all the victims of an unlawful policy of permitting the Maitre d's to share in the tips. But the arguably admissible evidence they present fails to establish this common policy because, as is clear from the discussion that follows, Plaintiffs' Declarations fail to establish that the Maitre d's were their "employer" or otherwise improperly shared in the pooled tips under the FLSA.

### 1. The Maitre D's Participation In the Tip Pool Is Not Unlawful Under the FLSA.

The FLSA allows employers to pay less than the minimum wage to employees who receive tips. 29 U.S.C. § 203(m). Employers can take a "tip credit" toward the wages of employees who qualify as "tipped employees." *Id.* A "tipped employee" is "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." 29 U.S.C. § 203(t). Employers are entitled to take the tip credit toward an employee's wage, provided that "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips." *Id.* § 203(m). This requirement has been interpreted in two ways. First, an employer may not take a tip credit toward an employee's wages where an "employer" participates in the tip pool. *See Chan v. Sung Yue Tung Corp.,* No. 03 Civ. 6048 (GEL), 2007 WL 313483, at *17 (S.D.N.Y. Feb. 1, 2007); *Dole v. Cont'l Cuisine, Inc.,* 751 F. Supp. 799, 802-03 (E.D. Ark. 1990). Second, an employer is not entitled to take the tip credit where pooled tips are shared with employee(s) other than those "who customarily and regularly receive tips." *Kilgore v. Outback Steakhouse of Fla., Inc.,* 160 F.3d 294, 300 (6th Cir. 1998).

### a. The Maitre d's Were Not Employers Under the FLSA

The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of or in relation to an employee." 29 U.S.C. § 203(d). "'[A] corporate officer with operational control of a corporation's covered enterprise is an employer along with the corporation.'" *Chan*, 2007 WL 313483, at *12 (quoting *Donovan v. Agnew*, 712 F.2d 1509, 1511 (1st Cir. 1983)). *See also Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp. 2d 220, 227 (S.D.N.Y. 2002) (finding a restaurant's managers to be "employers" under the FLSA where they held a substantial ownership interest in the restaurant and/or served on the board of directors, and had substantial authority over the operations of the restaurant, such as setting menu prices, determining restaurant hours, and hiring and firing employees). However, because the phrase "acting directly or indirectly in the interest of an employer in relation to an employee "taken literally would support liability against any agent or employee with any supervisory power over other employees" *Donovan*, 712 F.2d at 1510, the "economic reality" of the relationship between the alleged employer and employee has guided the courts' interpretations. *See Goldberg v. Whitaker House Coop.*, 366 U.S. 28, 33 (1961); *Frasier v. Gen. Elec. Co.*, 930 F.2d 1004, 1008 (2d Cir. 1991). "When determining whether a given person is an 'employer' for purposes of FLSA, 'the overarching concern is whether the alleged employer possessed the power to control the workers with any eye to the "economic reality" presented by the facts of each case.'" *Chan*, 2007 WL 313483, at *12 (quoting *Herman v. RSR Sec. Servs.*, 172 F.3d 132, 139 (2d Cir. 1999)). *Accord Rubin v. Tourneau, Inc.*, 797 F. Supp. 247, 252 (S.D.N.Y. 1992) ("In determining whether, as a matter of economic reality, an entity is an employer for purposes of the FLSA, courts focus on whether the alleged employer has some degree of control over the terms and conditions of employment.")

The prevailing inquiry regarding whether an individual or entity constitutes an "employer" under the FLSA looks at whether the employee or entity:

(1) had the power to hire and fire employees;

(2) supervised or controlled employee work schedules or conditions of employment;

(3) determined the rate and method of payment; and

(4) maintained employment records.

*Chan*, *supra*. *See also Herman*, 172 F.3d at 139. Applying these criteria, the *Chan* Court held that tips were not improperly shared with an employee who, though alleged by plaintiffs to be a manager, was more of a "senior floor captain with more limited supervisory responsibilities . . . ." *Chan*, 2007 WL 313483, at *20.

Here, the Restaurants are each run by a General Manager, who has the responsibility for and authority over all decisions with respect to the hiring, firing, and discipline of employees, payroll matters, and restaurant operations and staffing. (*See* Declarations of Choi ¶¶ 10, 11, Freedman ¶¶ 8, 9, Hanasby ¶¶ 11, 12, 13, Hitko ¶¶ 10, 11, 12, 14, Lee ¶¶ 23, 24, 25, Montevirgen ¶¶ 18, 19, 20, Vongericthen ¶¶ 9, 10, 12, 14.) Regardless of Plaintiffs' boilerplate statements concerning uniforms, calling employees in the event that staffing needs change, taking receipt of service staff's advance schedule request forms, assigning staff to a section of the dining room, or voiding or "comping" an item on a guest check, the Maitre d's do not constitute an "employer" under the FLSA, as it is the General Managers who exclusively have the authority over hiring, firing, and employee discipline and who handle all payroll matters. (Decls. of Choi ¶ 10, Hanasby ¶ 11, Hitko ¶ 10, Lee ¶ 23, Montevirgen ¶ 18, Vongerichten ¶ 9.)

Many courts have reached similar conclusions regarding other restaurant employees who, like Defendants' Maitre d's, lacked the authority to hire or fire employees or set their

compensation.  *See, e.g., Dole v. Cont'l Cuisine, supra*, 751 F. Supp. at 802-03 (holding that a

maitre d' of a restaurant was not an "employer" under the FLSA because such position did not

encompass the authority to hire, fire, control the manner in which work is performed, or set

employee wages); *Morgan v. Speakeasy, LLC*, No. 05 C 5795, 2007 WL 2757170, at *18 (N.D.

Ill. Sept. 20, 2007) (holding that senior servers were not "employers" because although they

"exercised some control over employees, such as sending them home, requesting additional staff,

and supervising their work . . . [t]hey had no authority . . . over hiring, firing or scheduling[,]

[n]or did they determine the rate or method of employee payment, or maintain employment

records beyond performing clerical duties such as completing the Nightly Closing Forms.").  *See

also Hernandez v. City Wide Insulation of Madison, Inc.*, No. 05-C-303, 2006 WL 1993552, at

*2-*3 (E.D. Wis. July 14, 2006) (noting that "courts generally reject 'the idea that a low-level

supervisor within a company'" is an "employer" under the FLSA and holding that an employee

who could hire employees and who had some control over their work schedules, but who did not

determine the rate or method of pay and performed only clerical duties related to employment

records was not an "employer") (citation omitted).)

> **b.    The Maitre D's Were Actively Engaged in Guest Service, and
> Therefore Were Properly "Tipped Employees"**

With respect to the second inquiry, employees "are engaged in an occupation in which

[they] customarily and regularly receive tips" ("tipped employees") where "they sufficiently

interact with customers in an industry (restaurant) where undesignated tips are common."

*Kilgore, supra*, 160 F.3d at 301.  In *Kilgore*, the Sixth Circuit held that restaurant hosts and

hostesses at Outback Steakhouse were properly included in the tip pool because, although not the

primary customer contact, "they do have more than de minimis interaction with the customers."

*Id*.  The court noted that the hosts perform important customer service functions, such as greeting

customers, supplying them with menus, seating them at tables, and occasionally "enhanc[ing] the wait." *Id.*; *See also Dole v. Cont'l Cuisine, Inc.*, *supra*, 751 F. Supp. at 803 (upholding a mandatory tip sharing practice that included a maitre d' who received no tips directly from customers and whose responsibilities included setting up the dining room, greeting and seating customers, serving the first drink order to customers, and assisting waiters in serving customers as needed).

The Maitre d's at issue in the present action actively participated in each service at the Restaurants. (Decls. of Choi ¶ 8, Hanasby ¶ 8, Hitko ¶ 8, Lee ¶ 8, Montevirgen ¶¶ 14, 15.) The Maitre d's ensure the overall success of each service, which includes assisting with guest service functions and "touching" each guest table at least once. (Decls. of Choi ¶ 8, Hitko ¶ 8, Lee ¶ 8, Montevirgen ¶ 15, Vongerichten ¶ 20.) As in *Kilgore* and *Continental Cuisine*, the Maitre d's may not be the primary customer contact, however, "they do have more than de minimus interaction with the customers" and, therefore, were properly included as "tipped employees."

**E.    Plaintiffs Have Failed to Carry Their Burden of Demonstrating that They Are Similarly Situated.**

**1.    The Tip Pool Claim**

Apparently anticipating this issue, in their Memorandum Plaintiffs argue that on a motion for conditional certification "[c]ourts do not weigh the merits of the underlying claims", resolve factual disputes, make credibility determinations or decide substantive issues. (Pls.' Mem. at 11.) Rather, they argue, the motion should be decided on the basis of the affidavits which, they assert, will necessarily contain unproven allegations. (*Id.* at 12.)

But the record here does not require the resolution of factual disputes or the making of credibility determinations. Rather, as demonstrated above, Plaintiffs' declarations, when the inadmissible evidence is stricken and the incomplete and misleading first-hand observations are

put into proper context, fail to present virtually any admissible evidence that the Maitre d's are

"employers" as that term is defined by the applicable case law. Hence, Plaintiffs' declarations,

properly read, present nothing more than their own conclusory assertions to that effect and thus

fail to establish that plaintiffs and the class they seek to represent have been the victims of a

common policy that violated the law. In contrast, Defendants have submitted seven declarations

establishing through admissible testimony the true functions of the Maitre d's during the relevant

period and that the Maitre d's participation in the tip pool was entirely lawful. On similar

records, where plaintiffs have failed to present admissible evidence to rebut the detailed factual

showing made by the defendant employer, courts have denied conditional certification motions,

finding that the plaintiffs had failed to meet their burden of demonstrating that they and their

putative class were the victims of a common unlawful policy or practice and were thus similarly

situated.

For example, in *Harrison v. McDonald's Corp.*, *supra*, plaintiffs claimed that their

employer improperly altered time records and, as a result, they were not paid for all the hours

they worked. They sought conditional certification for a class of employees who, they claimed,

had been similarly treated at the restaurant where they had worked. 411 F. Supp. 2d at 868. In

opposition, McDonald's submitted a detailed affidavit from the restaurant's manager explaining

McDonald's computerized timekeeping system and why, at times, time records were

appropriately edited. *Id.* at 868-69. In concluding that plaintiffs had failed to demonstrate that

they were similarly situated with their proposed class, the court wrote that "[o]nce the hearsay

statements are stricken from [plaintiff's] affidavits, there is scant evidence that any employee,

other than Plaintiff, was not fully compensated for all the hours he or she worked." *Id.* at 870.

As a result, "Plaintiff has offered nothing but speculation to support her belief that other

McDonald's employees were not paid all of the money to which they were entitled", and there was, therefore, "no basis for granting Plaintiffs' motion" for permission to notify the putative plaintiffs. *Id.* at 871.

Similarly, in *Stubbs v. McDonald's Corp.*, 227 F.R.D. 661 (D. Kan. 2004), plaintiff, a former second assistant manager at three McDonald's in the Kansas City area, alleged that management at those stores purposely understaffed them in order to reduce the amount of overtime paid to the nonexempt staff. As a result, he alleged, he had been forced to perform the duties of the hourly-paid staff, had been forced to work in excess of 40 hours a week and had been misclassified as an exempt employee. *Id.* at 663. Plaintiff sought to represent a class of all first and second assistant managers employed within the last three years at the Kansas City-area restaurants where he had worked and who, he alleged, had been similarly mistreated. *Id.* at 663. In a supporting affidavit, plaintiff stated he had had "numerous conversations with other assistant managers", and they had confirmed that their duties were similar to plaintiff's, had suffered the same business practices as he and had been forced to work in excess of 40 hours. *Id.* at 666. In response, McDonald's submitted five affidavits from current first and second managers "specifically and thoroughly" outlining their duties and "directly oppos[ing] plaintiff's assertions" that it had a practice of forcing managers to perform hourly employee duties in order to avoid paying overtime. *Id.* at 664.

In denying plaintiff's motion for conditional certification, the court acknowledged that "the standard required for proof of 'similarly situated' merely requires 'substantial allegations that the putative class members were together the victims of a single decision, policy or plan.'" *Id.* at 666 (citations and some internal quotation marks omitted). And "[w]hile this standard does not require . . . plaintiff to come forward with evidence of actual proof of a decision, policy or

plan," plaintiff was "require[d] . . . to provide more than his own speculative allegations . . . ."
*Id.* As a result, the court concluded "that plaintiff has failed to meet his burden to prove that he
and his putative class are similarly situated, especially in light of the evidence provided by
defendant . . . ." *Id.*

     *Lentz v. Spanky's Restaurant II, Inc.,* 491 F. Supp. 2d 663 (N.D. Tex. 2007), presents the
flip-side of this case. There, plaintiff, a headwaiter, sought permission to prosecute a collective
action on behalf of the restaurant's entire waitstaff. In support, plaintiff "failed to submit
evidence showing anything other than [p]laintiff's conclusory allegations contained in the form
of his first affidavit" that he was similarly situated with the other employees. *Id.* at 669. In
opposition, defendant submitted a detailed affidavit demonstrating that plaintiff exercised
substantial supervisory authority over the other waitstaff including hiring and firing and training,
had different responsibilities and was compensated differently. *Id.* On this record, the court
concluded that plaintiff had "failed to meet his burden" of establishing "that notice should be
given because the potential class members are similarly situated." *Id.* at 670.

     In *Dudley v. Texas Waste Systems, Inc.*, No. Civ.A.SA-05-CA-0078, 2005 WL 1140605,
at *2 (W.D. Tex. May 16, 2005), plaintiff claimed that he and the class he sought to represent
had been victimized by defendant's alleged policy of adjusting time records for lunch breaks that
allegedly had not been taken, thus reducing their reported overtime hours. But plaintiff failed to
refute defendant's showing that it had a written policy admonishing employees to take their
breaks and the testimony of its General Manager that drivers were told if they worked through
their break to so advise management so that they might be properly paid. As plaintiff's
"complaint and affidavits in support thereof contain unsupported assertions of improper lunch
break adjustments," the court "decline[d] to certify a collective action" on this issue. *Id.*

Other courts, too, have denied certification motions where plaintiffs made an inadequate evidentiary showing. *See, e.g., Seever v. Carrols Corp.*, 528 F. Supp. 2d 159, 174 (W.D.N.Y. 2007) (denying certification motion because affidavits that were "incomprehensibly vague" did "little to advance [plaintiffs'] modest burden to show that they and the putative plaintiffs were all victims of a common policy that violated the FLSA."); *Flores v. Osaka Health Spa, Inc.*, *supra*, 2006 WL 695675, at *3 S.D.N.Y. Mar. 16, 2006) (refusing to approve preliminary certification or notice where plaintiff failed to establish a common illegal policy or plan because her statements were conclusory and offered nothing of evidentiary value); *H & R Block, v. Housden*, 186 F.R.D. 399, 400 (E.D. Tex. 1999) (plaintiffs who only "submit[ted] affidavits making conclusory allegations" failed to satisfy their § 16(b) burden.)

The record here closely resembles that in those cases where certification has been denied: Plaintiffs have submitted no more than their own conclusory assertions that they are similarly situated and cannot rebut Defendants' detailed showing that the Maitre 'd's' participation in the tip pool was entirely lawful.  Plaintiffs' motion should be denied.

**2.      The "Other Practices" Claim**

In their motion, Plaintiffs seek certification only on the basis of the allegedly unlawful tip pool.  Significantly, they say nothing at all, and make no effort to seek certification on the basis of Defendants' alleged failure to pay them required overtime due to Defendants' supposed common policies, programs, practices, etc.. *See* 2d Am. Compl. ¶¶ 47, 48 (Second Claim for Relief).  From this failure, we assume that Plaintiffs have abandoned any claim to collectively represent current or former employees on this basis.  Certainly, as a matter of judicial economy Plaintiffs cannot be permitted to bring class certification motions piecemeal, as such would lead only to a greater expenditure of judicial resources and inefficient case management, outcomes

that are directly contrary to the stated purposes of permitting § 16(b) collective actions. *See* Pls.'
Mem. at 8 ("[C]ollective actions are favored under the law because they benefit the judicial
system by enabling the 'efficient resolution in one proceeding of common issues of law and fact
. . . .'") (quoting *Hoffman-La Roche, Inc. v. Sperling, supra*, 493 U.S. at 170)).  Nor can
Plaintiffs seek to continue to pursue these claims collectively by failing to address them in their
motion but then somehow hope to ride the coattails of their tip-pool claim.

      In any event, any effort by Plaintiffs to seek certification on any practice other than the
tip pool would fail as a matter of law and fact.  In the proceedings to date, Plaintiffs have stated
that one significant component of their claim based on such practices is Defendants' alleged
practice of failing to provide employees with required meal breaks but then deducting the break
time from the employee's time worked for the day as if he or she had taken the break.  As noted,
not only did Plaintiffs fail to submit any evidence on this issue, the evidence presented by
Defendants demonstrate that at the Restaurants, service employees uniformly were instructed to
take 30 minute meal breaks when working more than a six hour shift, that the Restaurants
provided meals to the employees during those breaks, or the employees could leave the
Restaurants to eat elsewhere or run personal errands during that time.  (Decl. of Freedman ¶ 11.)
In light of this unrebutted Restaurant-wide policy, any deviation would represent individual
failures by Restaurant managers to properly administer the Restaurants' policy and would not,
therefore, lend itself to collective resolution.

      In deciding whether to conditionally certify a collective action, "[t]he court must be
satisfied that there is a basis to conclude that question common to a potential group of plaintiffs
would predominate a determination of the merits in this case." *Mike v Safeco Ins. Co., supra,*
274 F. Supp. 2d at 220. *Accord Quintanilla v. A & R Demolition, Inc.,* No. Civ.A H-04-1965,

-23-

2005 WL 2095104, at *13 (S.D. Tex. Aug. 30, 2005) (noting that "[e]ven at the notice stage" the requirement that proposed class members be similarly situated to the named plaintiffs "ensures that the collective action promotes the 'efficient resolution of common issues of law and fact arising from the same alleged discriminatory activity.'") (quoting *Hunter v. Sprint Corp.*, 346 F. Supp. 2d 113, 119 (D.D.C. 2004)). But, as is the case here, "'[a] court may deny plaintiffs' right to proceed collectively if the action arises from circumstances purely personal to the plaintiff and not from any generally applicable rue, policy, or practice.'" *Id.* (quoting *England v. New Century Fin. Corp.*, 370 F. Supp. 2d 504, 507 (M.D. La. 2005)).

Applying these principles, the *Mike* court denied plaintiff's motion for certification, finding that his claim that he had been misclassified as an exempt administrative employee would require an "individual and fact-intensive" analysis. 274 F. Supp. 2d at 220. And "[b]ecause the proof in this case is specific to the individual" and the plaintiff had failed to provide "evidence of a common thread binding his proposed class of employees" the motion for certification was denied. *Id.* at 220-21.

Cases alleging time shaving have been found to be particularly unsuited to collective determination. For example, in *Diaz v. Electronic Boutique of America, Inc.*, *supra*, the court held that plaintiff's allegations "that he worked 'off-the-clock' without compensation and that his timesheets were altered to delete overtime hours worked — are too individualized to warrant collective action treatment." 2005 WL 2654270, at *5. And in *Seever v. Carrolls Corp.*, *supra*, the court denied plaintiffs' motion for conditional certification because there was no evidence that the employer's allegedly unlawful policy of requiring off-the-clock work was "part of a uniform policy common to other stores" other than the one at which plaintiffs worked. 528 F. Supp. 2d at 173. As "there is little indication in the record that the FLSA violations alleged by

plaintiffs were anything other than unilateral acts by 'rogue' managers at [the store where plaintiffs worked]", permitting the suit to proceed as a collective action would be inappropriate. *Id.* at 174.

The same is true here. Any determination of whether plaintiffs were treated inconsistently with the Restaurants' stated policy would require an individualized employee-by-employee, restaurant-by-restaurant determination that makes a collective action inappropriate.

## CONCLUSION

For all the foregoing reasons, Plaintiff's motion for conditional collective certification and for court facilitation of notice should be denied.

/s/ Elise M. Bloom
Elise M. Bloom
Kathleen M. McKenna
PROSKAUER ROSE LLP
1585 Broadway
New York, NY  10036-8299
Phone: (212) 969-3000
Fax: (212) 969-2900

Email: ebloom@proskauer.com
*Attorneys for Defendants*

Dated: New York, New York
       July 3, 2008