UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------- x
-

| | |
|---|---|
| ISAIAH GERAFINO, LENFORD JOHNSTON, SARA FAUST, SUKOL PHAIROJ, CHELSEA LINDMAN VIRGINIA WORLEY, ROSALINA WALTER and THOMAS CAMPBELL on behalf of themselves and all other similarly situated, | : Civil Action No.: 07-6729 **(RJS)** **(JCF)** |

              Plaintiffs,

     -against-

JEAN-GEORGES ENTERPRISES, LLC;
JEAN-GEORGES MANAGEMENT LLC;
PERRY STREET PROJECT LLC;
TRIOMPHE RESTAURANT CORP. d/b/a
JEAN GEORGES RESTAURANT and
NOUGATINE; ORIGINE LLC d/b/a JOJO
RESTAURANT; SPICE MARKET LLC;
LEONARD STREET LLC d/b/a 66
RESTAURANT; JEAN-GEORGES
VONGERICHTEN and JOHN DOES 1-10

             Defendants.

------------------------------------------------------- x

## MOTION IN SUPPORT OF STIPULATION OF SETTLEMENT AND DISMISSAL OF CLASS AND COLLECTIVE ACTION

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION …………… ………………………………………1

II.    BACKGROUND …………………………………………………2

    A. The Litigation…………………………………………………...........2

    B. The Parties Have Fully Explored the Strengths and Weakness of Their
Respective Positions…………………………………………………...6

III.    THE PROPOSED SETTLEMENT…..... ... ………………………7

    A. Settlement Class…………………………………………………...7

    B. Settlement Consideration………………………………………8

    C. Release of Claims…………………………………………………9

IV.    PRELIMINARY SETTLEMENT
APPROVAL.....……………………………………………………9

    A. The Role of the Court………………………………………………...9

    B. The Proposed Settlement Class May be Certified…………………………..10

        1. Plaintiffs Have Met All Of The Prerequisites Under Rule 23(a)…….11

            a. Numerosity is Satisfied……………………………………11
            b. Commonality is Satisfied…………………………………12
            c. Typicality is Satisfied………………………………………...12
            d. Adequate Representation is Satisfied…………………………...12

        2. The Court Should Certify The Settlement Class Under
Rule 23(b)(3)……………………………………………………13

        3.  The Court Should Appoint Plaintiffs' Counsel As Class Counsel….14

    C. Criteria To Be Considered In Deciding Preliminary Approval……………...15

        1. There Are No Grounds to Doubt The Fairness Of The Settlement,
Which Is The Product of Extensive, Arm's Length
Negotiations………………………………………………………17

2.   The Settlement Contains No Obvious Deficiencies…………..18

3.   The Settlement Falls Within The Range Of Possible
Approval……………………………………………………………..19

V.       THE PROPOSED PLAN OF CLASS NOTICE………...……...…..20

VII.     CONCLUSION ……………………………………………......23

Pursuant to Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") and Section 216(b) of the Fair Labor Standards Act ("FLSA"), Plaintiffs Isaiah Gerafino, Lenford Johnston, Sara Faust, Sukol Phairoj, Chelsea Lindman, Virginia Worley, Rosalina Walter and Thomas Campbell, individually and on behalf of the class they represent ("Plaintiffs" or "Class Representatives") ("Class Representatives") apply to this Court for preliminary approval of a proposed settlement in this wage and hour class and collective action ("Wage Action"). Counsel to Defendants Jean-Georges Enterprises, LLC, Jean-Georges Management LLC, Perry Street Project LLC; Triomphe Restaurant Corp., d/b/a Jean-Georges Restaurant and Nougatine; Origine LLC d/b/a JoJo Restaurant; Spice Market LLC; Leonard Street LLC d/b/a 66 Restaurant and Jean-Georges Vongerichten, ("Defendants") have agreed to the terms of the settlement and do not object to relief requested herein.

## I.    <u>INTRODUCTION</u>

Class Representatives submit this motion requesting preliminary approval of a proposed settlement in this Wage Action brought on behalf of certain employees of Defendants. The settlement will resolve all claims before this Court. The proposed compromise is set forth in a Joint Stipulation of Settlement and Release, dated September 3, 2008 ("Agreement"), attached as Exhibit A.

The Class Representatives ask this Court to enter the proposed Order ("Order"): (1) finding that the proposed settlement class meets the requirements for class certification under Rule 23; (2) approving the Class Notice (Exhibit B) that will be sent to the proposed settlement class; (3) setting a deadline within 20 days after the Order is preliminarily approved that the Class Notice be sent to the proposed Settlement Class members by mail to the employees' addresses as they are maintained by the Defendants; (4) appointing the Class Representatives as

class representatives for the purposes of prosecuting the state law claims on behalf of the proposed state class; (5) appointing Class Counsel as counsel for the proposed class; and, (6) scheduling a hearing at the Court's convenience at which the Court will consider the Parties' motion for (i) final approval of the settlement, (ii) entry of their proposed final judgment, and (iii) approval of Class Counsel's application for an award of attorneys' fees and reimbursement of costs.

## II.    BACKGROUND

### A.    The Litigation

On July 26, 2007, six Plaintiffs filed this Wage Action against Defendants.  The Complaint was subsequently amended twice, and the Second Amended Complaint (attached as Exhibit C) was filed on February 8, 2008.   The Wage Action alleged, *inter alia*, that Plaintiffs and other employees who worked at Perry Street restaurant, Jean-Georges restaurant, JoJo restaurant,   Spice Market restaurant and 66 restaurant had (a) been deprived of a portion of their tips as a result of a practice to share their tips with Maitre'd/Floor Managers and other non-service employees, and (b) were not paid for all hours worked.

The case was assigned for all purposes to Judge Richard J. Sullivan.   The Class Representatives' proposed class consisted of: "all non exempt persons employed by Defendants at any New York location in any tipped position, including server, runner, busboy, bartender, barback and/or captain, on or after the date that is six years before the filing of the original Complaint in this case as defined herein (the "Class Period")."

The Wage Action alleges that the Defendants violated the Federal Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.,* New York Labor Law §§ 191,193, 196-d,198-b, 650, *et. seq,* 652, and 663 and relevant sections of N.Y. Comp. Codes R. & Regs.   Plaintiffs contended that

2

Defendants paid them and the Class members an hourly wage equal to New York's food service worker minimum wage, 12 N.Y. Comp. Codes R. & Regs §137-1.5,[1] which is significantly lower than the federal and state minimum wages.[2]  They contended Defendants were not entitled to the state and/or federal "tip-credits," because Defendants routinely retained portions of their tips by allowing managerial and other non-tipped employees to share in their tip-pool. *See 29 U.S.C. §203(m)* (tip-credit does not apply where employers retain portions of employees' tips).  In addition, outside of a valid tip-pool, New York law prohibits an employer or an employer's agent from retaining any portion of an employee's tips, regardless of whether the employer avails itself of any tip-credits. *N.Y. Lab. Law § 196-d.  See Ayres v. 127 Restaurant  Corp.*, 12 F.Supp.2d 305, 308 (S.D.N.Y. 1998) (quoting 29 U.S.C. § 203(m)[3]) (finding that because Defendant's manager "was not an employee 'who customarily and regularly received tips,'" he could not be part of the tip-pool); *Chu Chung v. New Silver Palace Rest.*, 246 F. Supp. 2d 220, 229 (S.D.N.Y. 2002)  (invalidating a tip-pool in which management took part).

Class Representatives further contended that Defendants failed to pay them for all of the time that they spent "clocked-in" Defendants' electronic time- keeping systems. Finally, Class representatives contended that Defendants failed to pay New York State's spread of hours premium, which requires an employer to pay employees a premium equal to the New York minimum wage for days during which employees work in excess of ten hours. 12 N.Y. Comp.

---

[1]    In 2001-2004,  the foodservice worker minimum wage was $3.30 per hour, 2005- $3.85 per hour, 2006- $4.35 per hour, and 2007- $4.60 per hour.

[2]    From 2001-2005, the New York minimum wage was $5.15 per hour, in 2005, it became $6.00 per hour, 2006- $6.85 per hours, and 2007- $7.15 per hour.  12 N.Y. Comp. Codes R. & Regs §137-1.2.  During most of the relevant period, the federal minimum wage was $5.15.  29 U.S.C. § 206.

[3]    29 U.S.C. § 203(m) requires that "all tips received by such employee have been retained by the employee, except that this subsection shall not be construed to prohibit the pooling of tips among employees who customarily and regularly receive tips."

3

Codes R. & Regs §137-3.11.

The Class Representatives contended that Defendants were liable to the Settlement Class Members for an amount equal to the difference between their actual wages (the foodservice workers' minimum wage) and the minimum wage as applied without any tip-credits, plus the amount of tip money illegally retained by the Restaurant. *See Chan v. Sung Yue Tung Corp.*, 2007 WL 313483, **27-28 (S.D.N.Y. Feb 01, 2007) (where Defendants allowed managers to share in tip-pool, awarding both the illegally retained tips and the tip-credit differential). Additionally, the Plaintiffs sought payment of the unpaid portion of minimum and overtime wages, liquidated damages, penalties, interest, attorneys' fees, costs, and equitable relief to be provided to the entire proposed class.

Defendants maintained that their tip-pools were voluntary and that all members of their tip-pools were service employees who are allowed to share in tipped employees' tips. *See Kilgore v. Outback Steakhouse*, 160 F.3d 294 (6th Cir. Tenn. 1998) (allowing hosts to share in servers' tips because the hosts provide direct customer service). Defendants' further maintained that the unpaid clocked-in time in question was time given to the employees as meal periods, and it was therefore non-compensable under the FLSA. *See, e.g.,* 29 CFR § 785.19(a) ("Bona fide meal periods are not worktime.") Defendants' positions are set forth in greater detail in their July 3, 2008 opposition to Plaintiffs' motion for conditional certification. (Plaintiffs filed a reply brief on July 17, 2008).

The Parties engaged in settlement discussions and agreed to hold a voluntary mediation in November, 2007. In preparation for the mediation, the Parties informally exchanged documents and information relating to the claims in this lawsuit. The Parties analyzed the information produced and prepared their legal and factual positions in advance of the proposed

mediation.  However, because of the strong differences in the Parties' positions, the Parties cancelled the mediation and decided to proceed with litigating the action.

In early February 2008, Plaintiffs moved for conditional certification of this action as a collective action pursuant 29 U.S.C. § 216(b).  Plaintiffs' counsel conducted interviews and submitted sworn declarations from thirteen former and current employees supporting Class representatives' allegations that they and other similarly situated employees were subject to the illegal practices described above.

Defendants produced the complete personnel files of many Plaintiffs and/or opt-in Plaintiffs, wage and payroll records, over ten tip out reports for  each of the restaurants, and electronic clock-in and clock-out reports.   The Parties agreed that these abundant documents were relevant to the claims asserted by the Class Representatives and that the production of these documents facilitated meaningful and productive settlement discussions.   Class Counsel reviewed and analyzed all of the wage and tip records provided and other information produced by Defendants relating to the putative class.   In addition Class Counsel continued to review this information with dozens of plaintiffs and/or opt-in plaintiffs to further analyze the documents produced and the scope of damages that could be inferred from them.

In late May and through June of 2008, Class Counsel met with Defendants' counsel on least three separate occasions, each one lasting more than two hours.  At these meetings, the Parties debated their respective positions on liability and damages.  The meetings were highly beneficial to each party in assessing their own risks of proceeding with litigation, as the parties continued to learn new information about each other's respective positions.  At the last of these meetings, Defendant Vongerichten and three members of the corporate defendants' management were present, so that the Defendants and Plaintiffs' Counsel had the opportunity, under

5

supervision of counsel, to discuss their positions face to face.  The parties made clear that they were determined to move forward the litigation if they could not reach a fair resolution.  This being the case, the parties were not able to reach a resolution at these meetings, as their respective factual and legal positions differed strongly.

On July 18, 2008 the parties attended, pursuant to this Court's February 4, 2008 Order, a settlement conference before Magistrate Judge Francis.  The parties agreed that the settlement conference would be their last attempt at an early resolution.  Prior to the conference, the Parties each submitted a confidential position statement to Judge Francis.  Plaintiffs' position statement included spreadsheets containing their calculations of damages in this Wage Action.  The settlement conference lasted a full-day and resulted in the proposed Settlement.

### B.      The Parties Have Fully Explored the Strengths and Weakness of Their Respective Positions

During the pendency of the Wage Action, Class Counsel and Defendants' Counsel vigorously investigated the claims against Defendants.  Defendants voluntarily produced personnel files and sample weeks of tips and wage records for the restaurants throughout the claim period.  The Parties agreed that the production of these records concerned the claims asserted on behalf of the putative class and that the wage records helped facilitate meaningful settlement discussions.  Class Counsel analyzed all of the records provided and other information produced by Defendants relating to the putative class.

At all times throughout the Wage Action, Defendants continued to deny any liability or wrongdoing of any kind associated with the claims alleged in the Wage Action.

After countless hours of negotiation over a period of close to five months, the Parties' counsel entered into the attached Agreement settling the Wage Action, provided, of course, that the Court grants approval of the Agreement.  The settlement amount is, of course, a compromise

figure.  It took into account what the parties contended were risks regarding proof of wages owed, and other defenses asserted by Defendants.  The settlement amount accounts for the possibility a settlement reached months or even years later might be reduced due to Defendants' litigation costs.  Furthermore, the Class Representatives and Class Counsel also considered the time, delay, and financial repercussions in the event of liability trials, numerous damages trials, and appeal by Defendants.  Of particular relevance to the reasonableness of the proposed settlement is the fact that Defendants will vigorously contest Plaintiffs' claims if the Litigation does not settle.  Although the Class Representatives and Class Counsel believe that their claims have merit, they recognize that they would face legal, factual and procedural obstacles to recovery.  In light of the strengths and weaknesses of the case, the Class Representatives and Class Counsel believe that the settlement easily falls within the range of reasonableness because it achieves a significant benefit for the Settlement Class where failure before or at trial is possible.

## III.  THE PROPOSED SETTLEMENT

### A.  Settlement Class

The proposed settlement has been reached on behalf of the [proposed] "Class," defined in the Agreement as follows:

> "All persons who were employed by Defendants, at its Perry Street restaurant from July 14, 2005 through _____ __, 2008, Jean-Georges restaurant from July 26, 2001 through _____ __, 2008, Spice Market restaurant from February 12, 2004 through _____ __, 2008, JoJo restaurant from October 1, 2001 through _____ __, 2008, 66 restaurant from May 17, 2003 through April 15, 2007 , as a server, front waiter, captain, busser, runner, "office" worker, sommelier, coffee worker, cocktail servers, bartender or barback, where applicable, and inclusive."

6264/40909-002 Current/12016426v2

B.      **Settlement Consideration**

The Agreement provides that Defendants shall pay a total Gross Fund Value ("GFV") of One Million Seven Hundred and Fifty Thousand Dollars ($1,750,000.00), which includes attorneys' fees, costs, expenses, and Defendants' withholding payments.

Class Members will receive their entire award without having to file a proof of claim or a claim form. Class Counsel shall be paid, subject to Court approval, a contingent fee equal to 33.33% of the remaining GFV, or Five Hundred and Eighty Three Thousand, Three Hundred and Thirty Three Dollars ($583,333.00). This percentage is in accordance with the Professional Services Agreement entered into between the Class Representatives, all opt-in plaintiffs to date and Class Counsel. The Agreement also provides individual enhancement awards and incentive awards, which shall also be paid out of the GFV, subject to Court approval, to eight plaintiffs (including six Class Representatives) totaling Twenty Six Thousand Dollars ($26,000.00). The remaining amount (the "NFV") shall be distributed among Class Members that do not opt-out of the litigation ("Settlement Class Members") on a pro-rata basis determined by how many workweeks each Class Member worked for Defendants during the Class Period. Defendants will withhold relevant taxes from these payments.

The individual settlement amount shall be calculated in the following steps:

(A)      Each Server, Front Waiter, Captain, Cocktail Server and Bartender will receive 7 points for each workweek that the employee recorded in the Defendants' records at any time during the applicable Claim Period. Each Runner and Barback will receive 5 points for each workweek that the employee recorded in the Defendants' records at any time during the applicable Claim Period. Each Busser, Sommelier, Office and Coffee employee will receive 4 points for each workweek that the employee

8

recorded in the Defendants' records at any time during the applicable Claim Period.

(B)     Each Class Member's Total Points shall be the sum of their weeks worked times the applicable multiplier. To the extent a Class Member worked two different positions within one week during the applicable Claim Period, that Class Member shall receive the higher of the two point positions for that week.

The differences between the multipliers are based on each position's participation level in Defendants' tip-pools. For example, runners and bussers typically received fewer tips than waiters.

## C.    Release of Claims

In return for the above consideration, Settlement Class Members will release all "Released Claims" (as defined in the Settlement Agreement) against each and all of the Defendants and all related entities. In general, Settlement Class Members will release all wage and hour claims under state and federal law. Settlement Class Members will retain claims unrelated to their wage and hour claims.

## IV.    PRELIMINARY SETTLEMENT APPROVAL

### A.    The Role of the Court

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any compromise of claims brought on a class basis. Approval of a proposed settlement is a matter within the broad discretion of the district court. *See e.g. In re American Bank Note Holographics, Inc.,* 127 F.Supp.2d 418, at 429 (S.D.N.Y. 2001) ("Approval of the Settlement is within the Court's broad discretion."); *In re Michael Milken & Assoc. Sec. Litig.,* 150 F.R.D. 46,

53 (S.D.N.Y. 1997) (the trial court has discretion to approve a class action settlement and should be concerned with whether the settlement, taken as a whole, is adequate, fair and reasonable) (internal citations omitted); *In re Nasdaq Market-Makers Antitrust Litigation,* 176 F.R.D. 99, 102 (S.D.N.Y. 1997) ("Where the proposed settlement appears to be the product of serious, informed, non-conclusive negotiations, has not obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval, preliminary approval is granted.").

"If the court preliminarily approves the settlement, it must direct the preparation of notice of the certification of the settlement class, the proposed settlement and the date of the final fairness hearing." *In re Initial Pub. Offering,* 226 F.R.D 186, 191 (S.D.N.Y. 2005). Class members may then present arguments and evidence for and against the terms of the settlement before the Court decides whether the settlement is fair, reasonable and adequate. *Id.* (internal citations omitted).

In addition, because the FLSA's provisions are mandatory, employees' claims for back wages may not be compromised absent either supervision by the Secretary of Labor or approval by the Court. *See* 29 U.S.C. § 216(c).

## B.       The Proposed Settlement Class May be Certified

Prior to granting preliminary approval of a settlement, district courts determine whether the proposed settlement class is a proper class for settlement purposes. *See e.g., Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 620 (1997) (Courts examine whether the proposed class would be adequately represented and fairly treated by a class action settlement).

The Court may certify a class where plaintiffs demonstrate that the proposed class and proposed class representatives meet the prerequisites in Rule 23(a) - numerosity, commonality,

typicality and adequacy of representation - and one of the three requirements of Rule 23(b). Fed. R. Civ. P. 23; *In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d 124, 132-33 (2d Cir 2001). To establish a class under Rule 23(b)(3), it must be shown that "questions of law and fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3).

In certifying a settlement class, the Court is not required to determine whether the action, if tried, would present intractable management problems. *Amchem,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial") (internal citations omitted). Rather, the Court has great discretion in determining whether to certify a class. *See In re American Bank Note Holographics, lnc.,* 127 F.Supp.2d at 429 ("All aspects of settlement approval ...rest in the sound discretion of the district court.").

### 1. Plaintiffs Have Met All Of The Prerequisites Under Rule 23(a)

Plaintiffs have satisfied the numerosity, commonality, typicality and adequacy of representation requirements under Rule 23(a).

### a. Numerosity is Satisfied

The Parties estimate that the Class includes hundreds of members. Thus, the Class is so numerous that joinder of all Class members is impracticable. *See Consol. Rail Corp. v. Town of Hyde Park,* 47 F.3d 473, 483 (2d Cir. 1995) (holding that numerosity can be presumed at a level of 40 members).

### b. Commonality is Satisfied

There are several questions of law and fact common to the Settlement Class. Among these questions are: (i) whether Defendants employed Plaintiff and the Class within the meaning of New York State and federal law; (ii) whether Defendants maintained accurate records reflecting the time worked by the Settlement Class Members; (iii) whether the policies, programs, procedures, protocols of the Defendants violated the Settlement Class' right to collect overtime for all hours worked over forty hours per workweek; and (iv) whether Defendants or their agents retained portions of the Settlement Class' tips.

The Class Representatives and Settlement Class Members assert that each restaurant in which Settlement Class Members worked applied common practices and procedures, therefore, the commonality requirement is easily satisfied. *See Daniels v. City of New York,* 198 F.R.D. 409, 417 (S.D.N.Y. 2001) ("[t]he commonality requirement will be met if the named Plaintiffs share a common question of law or fact with the grievances of the prospective class.").

### c.    Typicality is Satisfied

Similarly, the typicality requirement is satisfied here because Plaintiffs' claims arise from the same "course of events" – namely whether Defendants' tip-pools and payroll practices complied with federal and state wage laws - as those of absent class members and rely on "similar legal arguments" to prove Defendants' liability. *See Robinson v. Metro North Commuter R.R.,* 267 F.3d 147, 155 (2d Cir. 2001).

### d.    Adequate Representation is Satisfied

Finally, Class Representatives are adequate representatives of the proposed class and have fairly and adequately represented and protected the interests of all Settlement Class Members in achieving this settlement.  The Class Representatives have no known conflicts with any Settlement Class Members, and retained Class Counsel who are qualified and experienced in

12

class action and employment litigation.

Moreover, the Settlement Class Members are represented by two prominent wage and hour litigation firms.  Class Counsel conducted a thorough pre-filing and continuing investigation, vigorously prosecuted the lawsuit, and negotiated a settlement that provides prompt and valuable relief to Settlement Class Members.  *See Baffa v. Donaldson, Lufkin & Jenrette Securities Corp.,* 222 F.3d 52, 60 (2d Cir. 2000) (class counsel will be deemed adequate if it has no conflicts to any class member and if they are "qualified, experienced and able to conduct the litigation.").

## 2.    The Court Should Certify The Settlement Class Under Rule 23(b)(3)

Certification is appropriate because, as set forth above, the predominance and superiority requirements of Rule 23(b)(3) are satisfied.  Specifically, the questions of law and fact common to all Settlement Class Members are described above. These common questions predominate over any individual issues such as the nature and extent of damages. *See In re Visa Check/Mastermoney Antitrust Litig.,* 280 F.3d at 139 ("Common issues may predominate when liability can be determined on a class-wide basis, even when there are some individualized damage issues.").

Additionally, a class action is superior to other available methods for the fair and efficient adjudication of the controversy because joinder of all Settlement Class Members is impossible. Moreover, as the damages suffered by individual members of the Settlement Class are relatively small as compared to the expense and burden of individual litigation, it would be exceedingly difficult for all Settlement Class Members to individually redress the harm done to them. *Ansoumana v. Gristede's Operating Corp.,* 201 F.R.D. 81, at 89 (S.D.N.Y. 2001) ("[t]he interest of the class as a whole to litigate the predominant common questions substantially

13

outweighs any interest by individual members to bring and prosecute separate actions.").

In sum, the Settlement Class is suitable for certification, and the Court should certify the Settlement Class pursuant to Rule 23(b)(3), for purposes of granting preliminary approval to the settlement.

### 3.    The Court Should Appoint Plaintiffs' Counsel As Class Counsel

Under Rule 23, "a court that certifies a class must appoint class counsel ... [who] must fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(A), (B). In making this determination, the Court must consider counsel's: (1) work in identifying or investigating potential claims; (2) experience in handling class actions or other complex litigation and the types of claims asserted in the case; (3) knowledge of the applicable law; and (4) resources committed to representing the class. Fed. R. Civ. P. 23(g)(1)(C).

D. Maimon Kirschenbaum and Charles Joseph of Joseph & Herzfeld LLP, and Jeffrey E. Goldman of the Law Offices of Jeffrey E. Goldman, and their respective firms have served and currently serve as lead counsel on many local and national class and collective actions under the FLSA and state wage and hour laws. D. Maimon Kirschenbaum and Charles Joseph of Joseph & Herzfeld LLP have served and currently serve as lead counsel on many local and national class and collective actions under the FLSA and state wage and hour laws. Specifically, Mr. Kirschenbaum has extensive experience serving as lead counsel in a number of local class and collective actions representing aggrieved employees in the restaurant industry. *See, e.g.*, *Fasanelli v. Heartland Brewery, Inc.*, 516 F. Supp. 2d 317, 323 (S.D.N.Y. 2007) (granting conditional certification on behalf of all hourly employees employed at defendants' six New York City restaurants). Collectively, Class Counsel has recovered significant monetary awards for thousands of New York City restaurant employees. Class Counsel spent significant time

investigating the Class' claims, and committed themselves to the expenditure of significant resources that were necessary to achieve a favorable result for the Class.  Therefore, the Court should appoint the undersigned to serve as Class Counsel for the Settlement Class pursuant to Rule 23(g).

C.    **Criteria To Be Considered In Deciding Preliminary Approval**

After certifying the Settlement Class, the Court determines whether to preliminarily approve the settlement by making "a preliminary determination of the fairness, reasonableness, and adequacy of the settlement terms." *Manual for Complex Litigation, Fourth,* § 21.633. The primary question raised by a request for preliminary approval is whether the proposed settlement is "within the range of reasonableness." *Id.* § 40.42.

"In considering preliminary approval, courts make a preliminary evaluation of the fairness of the settlement, prior to notice."  *Nasdaq Market-Makers Antitrust Litigation,* 176 F.R.D. at 102.  The purpose of the preliminary approval inquiry is "to determine whether the proposed settlement is within the range of possible approval."  *In re Prudential Sec. lnc.* 163 F.R.D. 200, 209 (S.D.N.Y. 1995) (the role of the court is to determine whether the proposed basis for settlement is adequate, reasonable and fair and justifies providing notice of the settlement to the proposed class).

It is the fairness hearing that affords class members "an opportunity to present their views of the proposed settlement."  *In re Initial Public Offering,* 226 F.R.D. at 191. Accordingly, a district court reserves its ultimate determination of whether a proposed settlement is fair, reasonable, and adequate for the final approval stage, after notice of the settlement has been given to the class members and they have had an opportunity to voice their views of the settlement or to exclude themselves from the settlement. *In re Prudential,* 163 F.R.D. at 210

(noting that the court can better evaluate the fairness of the settlement "at the fairness hearing, where it can consider the submissions by proponents and potential opponents of the settlement and the reaction of the Class Members.").

"It is well established that there is an overriding public interest in settling and quieting litigation, and this is particularly true in class actions." *In re Prudential,* 163 F.R.D. at 209; *Wal-Mart Stores, Inc. v. Visa U.S.A. Inc.,* 396 F.3d 96, 117 (2d Cir. 2005) ("The compromise of complex litigation is encouraged by the courts and favored by public policy."); *In re Luxottica Group S.P.A. Sec. Litig.,* 233 F.R.D. 306, 310 (E.D.N.Y. 2006) ("Class action suits readily lend themselves to compromise because of the difficulties of proof, the uncertainties of the outcome, and the typical length of the litigation.").  "[S]ince the very purpose of a compromise is to avoid the trial of sharply disputed issues and to dispense with wasteful litigation, the court must not turn the settlement hearing into a trial or a rehearsal of the trial; and that the court is concerned with the likelihood of success or failure and ought, therefore, to avoid any actual determination on the merits." *Saylor v. Lindley,* 456 F.2d 896, 904 (2d Cir. 1972) (internal citations omitted). Moreover, the opinion of experienced counsel supporting the settlement is entitled to considerable weight. *See e.g., In re Global Crossing Securities and ERISA Litigation,* 225 F.R.D. 436, 461 (S.D.N.Y. 2004) ("In addition to this presumption of fairness, great weight is accorded to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.") (internal citations omitted); *In re American Bank Note Holographics, Inc.,* 127 F.Supp.2d at 430 ("As with other aspects of settlement, the opinion of experienced and informed counsel is entitled to considerable weight.").

Here, experienced counsel, after substantial adversarial litigation and negotiation, and after a lengthy settlement conference before Magistrate Judge Francis, have concluded that the

proposed settlement - which includes, among other things, substantial monetary benefits to the class members - is in the best interest of the Class as a whole. As explained above, each Settlement Class Member who does not opt-out will receive a significant prorated sum per workweek that he or she worked for Defendants. The settlement merits preliminary approval and submission to the Settlement Class for its consideration.

> **1.    There Are No Grounds to Doubt The Fairness Of The Settlement, Which Is The Product of Extensive, Arm's Length Negotiations**

The criteria for evaluating a request for preliminary approval have been summarized as follows:

> If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval, the court should direct that notice under Rule 23(e) be given to the class members of a formal fairness hearing, at which arguments and evidence may be presented in support of and in opposition to the settlement.

*In re Prudential,* 163 F.R.D. at 209 (quotation omitted). Under this criteria, the Court should grant preliminary approval of the proposed settlement and order the dissemination of notice.

Moreover, where a settlement is the by product of a mediation, there is a presumption of fairness and arms-length negotiations. *In re AOL Time Warner, Inc.*, 2006 WL 903236, at *7 (S.D.N.Y. 2006) (there is a presumption of fairness when the parties submit to mediation and conclude that settlement is the most efficient outcome of the litigation for their clients).

The first consideration in the preliminary-approval analysis is whether "the settlement is the result of serious, informed and non-collusive negotiations." *In re Medical X-Ray Film Antitrust Litig.,* 1997 U.S. Dist. LEXIS 21936, at *19 (E.D.N.Y. Dec. 10, 1997). In applying this factor, courts give substantial weight to the experience of the attorneys who prosecute the case and negotiated the settlement at arms-length. *In re Initial Public Offering Sec. Litig,;* 243

F.R.D. 79, at 83 (S.D.N.Y. 2007) ("A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.") (internal citations omitted).

The proposed settlement here is the product of extensive negotiations conducted over a prolonged period of time.  Based on their familiarity with the factual and legal issues, and with the assistance of Magistrate Judge Francis, the Parties were able to negotiate a fair settlement, taking into account the costs and risks of continued litigation. The negotiations were at all times hard-fought and at arm's length, and have produced a result that the Class Representatives and Class Counsel believe to be in the best interests of the Settlement Class.

### 2.    The Settlement Contains No Obvious Deficiencies

The proposed settlement has no obvious deficiencies. The settlement provides only modest representative enhancement awards and incentive awards for certain Plaintiffs in this lawsuit that were instrumental in facilitating a resolution of this matter in a *total* amount not to exceed $26,000.  These awards are reasonable in light of the overall benefit conferred on the Settlement Class. *See, e.g., Sheppard v. Consolidated Edison Co. of New York, Inc.,* No. 94-CV-0403, 2002 WL 2003206, at *6-7 (E.D.N.Y. Aug. 1, 2002) (approving aggregate incentive payment of $119,167 for six named plaintiffs in a race discrimination class action).

Finally, the settlement does not mandate excessive compensation for Class Counsel. Class Counsel will apply for an award of attorneys' fees and reimbursement of expenses, equal to 33 1/3% of the GFV.  This percentage is "within the range of reasonable attorney fees awarded in the Second Circuit."  *See Klein ex rel. Ira v. PDG Remediation, Inc.*, 1999 WL 38179 (S.D.N.Y. 1999); *See also, Strougo ex rel. Brazilian Equity Fund, Inc.,* 258 F.Supp.2d 254, 262 (33 1/3% of settlement fund approved for attorneys' fees); *In re Blech Sec. Litig.,* No.

94 Civ. 7696, 2002 WL 31720381, at *1 (S.D.N.Y. Dec. 4, 2002) (33 1/3% of settlement fund approved for attorneys' fees, plus costs); *Adair v. Bristol Technology Sys.*, No. 97 Civ. 5874, 1999 WL 1037878, at *4 (S.D.N.Y. Nov. 16, 1999) (33% of settlement fund approved for attorneys' fees, plus costs); *Cohen v. Apache Corp.,* No. 89 Civ. 0076, 1993 WL 126560, at *1 (S.D.N.Y. Apr. 21, 1993) (33 1 /3% of settlement fund approved for attorneys' fees); and *In re Crazy Eddie,* 824 F. Supp. 320, 326 (E.D.N.Y. 1993) (33.8% of settlement fund approved for attorney's fees, plus costs).

### 3. <u>The Settlement Falls Within The Range Of Possible Approval</u>

As explained above, the proposed Settlement was reached only after protracted arm's length negotiations and ultimately a settlement conference between the Parties and their counsel who considered the advantages and disadvantages of continued litigation. Class Counsel believes that this settlement achieves all of the objectives of the litigation, namely a monetary settlement to the employees of Defendants' who were subjected to alleged illegal retention of tips and gratuities and other allegedly illegal practices. Class Counsel, with a great deal of experience in the prosecution and resolution of class actions and collective action litigation, have carefully evaluated the merits of this case and the proposed settlement. Even if the matter were to proceed to trial, Class Counsel acknowledges that the apparent strength of Plaintiffs' claims is no guarantee against a complete or partial defense verdict. Furthermore, even if a judgment were obtained against Defendants at trial, the relief might be no greater, and indeed might be less, than that provided by the proposed Settlement.

In light of the above considerations, the proposed settlement as a whole falls within the range of possible final approval. The Court should therefore grant preliminary approval of the settlement and direct that notice of it be given to the Settlement Class.

## V.    THE PROPOSED PLAN OF CLASS NOTICE

"For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  Fed. R. Civ. P.23(c)(2)(B); *see also Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 175-76 (1974)  ("each class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby preserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action.").

Rule 23(e)(B) similarly states, "[t]he court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(B). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness."  *Wal-Mart Stores,* 396 F.3d at 113 (internal citations omitted). "There are no rigid rules to determine whether a settlement notice to the class satisfies constitutional or Rule 23(e) requirements; the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Id.* at 114 (internal citations omitted).  Notice is "adequate if it may be understood by the average class member."  4 Alba Conte & Herbert Newberg, Newberg on Class Actions § 11:53, at 167 (4th ed. 2002).

Here, Class Counsel shall mail the Class Notice Forms to all Settlement Class Members at their last known addresses as maintained by Defendants.  Class Counsel shall mail these Notices via first class mail.  For each Class Notice returned to Class Counsel as undeliverable, Class Counsel will attempt a skip trace using the computer databases available and the

information provided by Defendants. Those individuals who are located using the skip trace will be sent an additional copy of the Class Notice.

The proposed methods of notice comport with Rule 23 and the requirements of due process. As for the content of the notice, Rule 23(c)(2)(B) says:

> The notice [to a rule 23(b)(3) class] must concisely and clearly state in plain, easily understood language:
>
> - the nature of the action,
>
> - the definition of the class certified,
>
> - the class claims, issues, or defenses,
>
> - that a class member may enter an appearance through counsel if the member so desires,
>
> - that the Court will exclude from the class any member who requests exclusion, stating when and how members may elect to be excluded, and
>
> - the binding effect of a class judgment on class members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). Where notice is being sent in connection with a proposed settlement, "the settlement notice must 'fairly apprise the prospective members of the class of the terms of the proposed settlement and of the options that are open to them in connection with the proceedings.'" *Wal-Mart*, 396 F.3d at 114 (internal citations omitted).

The proposed Class Notice comports with the above-cited legal authorities in all respects. To that end, the proposed Class Notice: (1) describes the nature, history, and status of the litigation; (2) sets forth a clear definition of the proposed Settlement Class; (3) states the class claims and issues; (4) clearly provides that Settlement Class Members may enter an appearance through their own counsel; (5) discloses the right of the people who fall within the definition of the Settlement Class to exclude themselves from the Settlement, and specifies the

deadline and procedure for doing so; (6) warns of the binding effects of the settlement approval proceedings on those persons who remain in the Settlement Class; and (7) advises the Class Members of how their recovery will be calculated.  In addition, the Class Notice clearly describes the terms of settlement, and the relief available to Settlement Class Members.

The proposed Class Notice also provides clear notice that the Parties have agreed upon compensation for Class Counsel, in the form of attorneys' fees or reimbursable litigation expenses, and advises Settlement Class Members of the Parties' agreement that the award of attorneys' fees and reimbursable expenses to Class Counsel will affect the benefits available to Settlement Class Members.

Finally, the Class Notice also provides contact information for Class Counsel, summarizes the reasons the parties are proposing the settlement, discloses the date, time and place of the formal Fairness Hearing, and describes the procedures for objecting on the settlement and appearing at the Fairness Hearing.

The Class Notice's contents satisfy all applicable requirements. Therefore, in granting preliminary settlement approval, the Court should also approve the parties' proposed form and method of giving notice to the Settlement Class.

6264/40909-002 Current/12016426v2

## VI.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully ask that the Court grant

preliminary approval of the proposed settlement and enter the proposed Preliminary Order in

connection with Settlement Proceedings, submitted herewith.

Date:  New York, New York
       September 11, 2008


                                        <u>/s/D. Maimon Kirschenbaum</u>

                                        D. Maimon Kirschenbaum (DK-2338)
                                        Charles E. Joseph (CJ-9442)
                                        JOSEPH & HERZFELD LLP
                                        757 Third Avenue, 25th Floor
                                        New York, NY 10017
                                        Tel: (212) 688-5640
                                        Fax: (212) 688-2548

                                        *Attorneys for Settlement Class*

6264/40909-002 Current/12016426v2